DAVID P. DEAHY *vs.* AMBROSE CHOQUET, *et al.*

JUNE 26, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)  *Bills and Notes.  Accommodation Endorsers.  Joint Makers.*

Promissory note in the following form: "Three months after date I promise to pay to the order of B. eighteen hundred dollars." Signed by "C." Upon the back of the note were the signatures of "B.," "D.," and "E." The money was advanced to the maker by plaintiff, all the names being affixed before delivery for the accommodation of the maker, plaintiff knowing the names were those of accommodation endorsers:—

*Held,* that "B.," "D.," and "E." by endorsing the note assumed the obligation of successive endorsers to become effectual when it came into the hands of a holder for value and were entitled to notice of dishonor of the note under sections 97 and 111 of article VIII, chapter 674, of the Public Laws and were not liable as joint makers, the latter doctrine having no validity since the passage of section 71 of the negotiable instruments act.

(2)  *Bills and Notes.  Discharge of Parties Secondarily Liable.*

After action brought against the maker and endorsers of a promissory note, an agreement was entered into, between plaintiff and the maker, by which plaintiff agreed on certain conditions not to press the suit:—

*Held,* that the agreement was a postponement of plaintiff's right to enforce the note within the meaning of subsection 6 of section 128 of the negotiable instruments act, and discharged the endorsers.

ASSUMPSIT on promissory note. Heard on exceptions of plaintiff, and overruled.

DOUGLAS, C. J. A few days before June 5th, 1901, the defendant Choquet, being desirous of borrowing some money, called, with defendant Carroll, upon the plaintiff and asked him for a loan upon a proposed note. The plaintiff offered to lend the money if the note should be endorsed by reliable persons. On June 5th, Choquet, accompanied by Carroll, called again and offered to the plaintiff a promissory note in the words and figures following:

"$1,800 00/100.

"PAWT., R. I., May 29, 1901.

"Three months after date I promise to pay to the order of

Joseph H. Beland Eighteen Hundred 0%100 Dollars at the Ind.
Trust Co. Pawt. Branch.

"Value received

"AMBROSE CHOQUET."

Upon the back of the note were the signatures,

"J. H. BELAND.
"HUGH J. CARROLL.
"HUGH J. McGINN."

The plaintiff examined the note and approved it, where-
upon Carroll wrote at the bottom, after the printed word
"Due" the words and figures "Sept. 5 '01. Money ad-
vanced June 5, '01," and the plaintiff took the note and
gave to Choquet his check for $1,737, deducting from the
face of the note $63 for three months' interest.

No presentation of the note was made at the bank, either
three months from its date or three months from June 5th.
No notice of dishonor was ever given to the parties whose
names are upon the back of the note.

This action was begun by a writ of attachment dated January
7th, 1904, which was served January 25th by attachment of
real estate of defendant Carroll and personal property of de-
fendant Choquet and by summons of defendants Beland and
McGinn. All the defendants answered, and certain special
pleas having been overruled on demurrer, trial upon the
general issue was begun December 5th, 1906, and ended
December 7th by a verdict, by direction of the court, against
the defendant Choquet and in favor of the other defendants.

The verdict in favor of the defendants Beland, Carroll, and
McGinn was directed on the ground that they were endorsers
and released from liability by failure of the holder to make
due presentment for payment of the note and to give them
notice of the dishonor, as well as on the ground that the agree-
ment referred to was an extension of time given to the maker
within the meaning of section 128, sub. 6, Neg. Instru. Act.

(1) We think the direction should be sustained.

Article I, section 3 of the negotiable instruments act, cap.

674 Pub. Laws, provides that: "The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are 'secondarily' liable."

Article VI, section 71, of the same act provides that: "A person placing his signature upon an instrument otherwise than as maker, drawer, or acceptor is deemed to be an endorser unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

The defendants named come within the plain language of these sections, and there is no evidence that they made any agreement to vary their liability.

They all affixed their names to the note, before delivery, for the accommodation of Choquet, to whom the plaintiff directly paid the money for it, knowing that they were such accommodation endorsers. As such they were entitled to notice of the dishonor of the note by sections 97 and 111 of article VIII, chapter 674, which they never received.

It is urged, however, by the plaintiff that all these defendants became liable to him as joint makers because he would not have taken the note if their names had not been upon it; and in regard to defendant Carroll, that there was an express waiver by him of presentment and notice.

The claim that the endorsers are liable as makers because the plaintiff required good endorsers before he would discount the note is the height of absurdity. If it were valid every endorser whose name was of any value would be held as a maker. The principle which the plaintiff mistakes as applicable to this case is well stated in the case which he cites—*Equitable Marine Insurance Co.* v. *Adams,* 173 Mass. 436. In that case the company assented to the assignment of a policy of insurance on condition that the assignee should endorse the premium note, which of course had been made and delivered at the time the policy was issued. The court held that Pub. Stats. of Mass. Chap. 77, § 15—"Every person becoming a party to a promissory note payable on time, by a signature in blank on the back thereof, shall be entitled to notice of non-payment the same as an endorser"—does not

refer to a collateral contract made subsequent to the issuing of a note and upon an independent consideration, even if it happens to be endorsed upon the note instead of being written upon a separate piece of paper. The case of *Downey* v. *O'Keefe*, 26 R. I. 571, holds the familiar doctrine, which prevailed in Rhode Island until the operation of the negotiable instruments act, that one not the payee of a note, who endorses it or agrees to endorse it before its issue, is liable as a joint maker. *Moies* v. *Bird*, 11 Mass. 436, and *Leonard* v. *Wildes*, 36 Me. 265, are to the same effect. This doctrine has no validity since the passage of section 71 of the negotiable instruments act.

In the case at bar the note was issued when the plaintiff paid the maker a consideration for it, and there is no evidence of any consideration being paid to the endorsers or of any agreement with them other than that expressed by their signatures upon the note. By endorsing the note they assumed the obligation of successive endorsers to become effectual when it came into the hands of a holder for value. This obligation was released by failure to make presentment and to give notice of dishonor, and the plaintiff has no claim upon them unless they have waived their rights as endorsers. There is no claim that Beland and McGinn ever did so, and the verdict in their favor must stand.

In the case of Carroll, the plaintiff testified that in the last week in August, 1901, he called upon Carroll and the following conversation occurred: "Q. What was said? A. He seemed to be surprised. I said, ' By the way, I have not put that in the bank yet.' He says, ' That is all right. You don't need to. As long as you keep the note, the note is all right, the names are all right.' Q. Did he give any reason why it was not necessary to put it in the bank? A. He said if I sold the note, then he would have to put it in, but it was not necessary as long as I was the original holder." Carroll denied that this conversation ever occurred or that he had any conversation with the plaintiff after the making of the note till more than a year had elapsed. We think, if the conversation did occur at the time when the plaintiff

places it, that it amounted to a waiver on Carroll's part of presentment and notice, and hence that on that question of fact the plaintiff was entitled to go to the jury.

But it is necessary to consider another independent ground of defence, which arises from these circumstances:

(2) Before the return day of the writ the plaintiff became a party to the following agreement:

"Agreement made and entered into this 8th day of February, A. D. 1904, by and between David P. Deahy, of the city of Pawtucket, and Ambrose Choquet of Central Falls, in the county of Providence:

"Whereas said Deahy has begun suit against said Choquet and others in the Common Pleas Division of the Supreme Court, in the county of Providence, to recover the amount due upon a certain promissory note for Eighteen hundred dollars, dated May 29th, 1901, signed by said Ambrose Choquet and payable to the order of Joseph H. Beland three months after the date thereof, and which said note was endorsed by said Joseph H. Beland, Hugh J. Carroll, and Hugh J. McGinn, which said suit is returnable to said court February 20, 1904:

"And whereas the plaintiff has attached upon the original writ in said suit certain linotype machines belonging to said Ambrose Choquet and being run and operated at the shop of Lester W. Upham and George H. Burroughs, copartners as the Chronicle Printing Company, under a certain agreement with said Choquet:

"And, whereas said David P. Deahy has agreed to withdraw said attachment upon said machines upon promise of the payment of the lawful costs in said suit to date, and upon payment to him of the sum of at least Fifteen dollars per month from any sum of money which may become due and payable to said Ambrose Choquet by said Chronicle Printing Company between the twentieth and the last day of each month succeeding the date hereof, the same to be applied by said Deahy toward the payment of said note, interest and costs:

"Now witnesseth, said Choquet agrees to authorize the payment to said Deahy of at least fifteen dollars per month and

any sum over that amount due and payable to him monthly from said Chronicle Printing Company, as aforesaid, the same to be applied toward the payment of the amount due upon said note, interest and costs of said attachment to this date, and said Deahy agrees, in consideration of the premises, to withdraw and discharge said attachment, and also agrees not to press said suit against said Choquet while such payments shall be made and assured to him monthly as above specified.

"In witness whereof said parties have set their hands to this agreement in triplicate the year and day first above written.

"Executed in the presence of        DAVID P. DEAHY,
   "PATRICK V. MCELROY.          AMBROSE CHOQUET."

"We, Lester W. Upham and George H. Burroughs, co-partners doing business under the name and style of the Chronicle Printing Company in said Pawtucket, hereby consent to pay over monthly to said David P. Deahy the sum of fifteen dollars, or such balance which may become due and payable by us to said Choquet for linotype work performed for us after however, deducting from the same such sum of money which we may and might advance to said Choquet to help him to run said linotype machines.

"PAWTUCKET, R. I. February, A. D., 1904.
   "CHRONICLE PRINTING COMPANY,
                    "LESTER W. UPHAM,
                    "GEORGE H. BURROUGHS."

The undertaking of the Chronicle Printing Company, though differing slightly from the promise of Choquet, was accepted by the plaintiff and the attachment of the personal property of Choquet was immediately released. Payments were made under said agreement from that time to nearly the time of trial, and were received by the plaintiff as installments due under the agreement.

The plaintiff excepted to the admission of this agreement in evidence under the general issue, and to the direction of the verdict in favor of defendants Beland, Carroll, and McGinn.

This matter of defence was first offered by special plea and excluded on demurrer, but the defendant's exception to that ruling is not before us.

In assumpsit the rule has grown up that it is improper to plead specially such matters as discharge, payment, and the like, as such defences amount to the general issue. If the transaction was in law a discharge of the three defendants who pleaded it, they were entitled to present it in one form or the other.

It is argued on behalf of the defendants that the discharge of the attachment was a discharge of the endorsers from further liability. While there is eminent authority for such a contention, the contrary is held in all the New England States. We do not find it necessary to discuss the question, inasmuch as we find the next point conclusive. It is that the agreement gave an extension of time to Choquet, under the provisions of the negotiable instruments act, section 128: "A person secondarily liable on the instrument is discharged; . . . Sub. 6. By any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument unless made with the assent of the party secondarily liable, or unless the right of recourse against said party is expressly reserved."

We agree with the Superior Court that the promise not to press the suit on the note against Choquet was a postponement of the holder's right to enforce the instrument within the meaning of the law, and so discharged the defendant Carroll, who was the only one then bound in any case.

The plaintiff's exceptions are overruled, and the case is remanded to the Superior Court for judgment on the verdict.

*John W. Hogan and Philip S. Knauer,* for plaintiff.

*Irving Champlin, Hugh J. Carroll, and Thomas Riley, Jr.,* for defendants.