### McDONALD v. LUCKENBACH.

(Circuit Court of Appeals, Third Circuit. April 19, 1909.)

#### No. 19.

1. BILLS AND NOTES (§ 281*)—INDORSERS—NATURE AND EXTENT OF LIABILITY.
   Under Negotiable Instruments Act Pa. May 16, 1901 (P. L. 203) § 63, which provides that "a person placing his signature upon an instrument otherwise than as maker, drawer or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be found in some other capacity," the fact that persons who signed their names in blank upon a note given by a corporation were respectively the president and secretary of such corporation, and as such officers executed the note in its behalf, did not enlarge their individual liability, which was that of indorsers only, who could not be held, except on presentment, demand, and notice of nonpayment by the principal.

   [Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 281.*]

2. CORPORATIONS (§ 306*)—LIABILITY OF OFFICERS—UNAUTHORIZED EXECUTION OF NOTE.
   The fact that the president and secretary of a corporation, who as such officers signed a promissory note in its behalf, did so without authority, does not render them individually parties to the note, nor liable thereon as makers; their liability being for breach of their implied warranty

---

that they had authority, provided the payee was ignorant of the fact that they did not, and relied on such implied warranty.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1457, 1458; Dec. Dig. § 306.*]

3. BILLS AND NOTES (§ 489*)—ACTION—VARIANCE.

An action to charge a defendant as an indorser of a note of a corporation affirms the validity of the note, and there can be no recovery therein on the ground that the note is void because executed without authority, and that defendant is liable because as an officer he signed the same in its behalf.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 489.*]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 164 Fed. 296.

John G. Johnson, for plaintiff in error
Charles Biddle, for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and BRADFORD, District Judge.

GRAY, Circuit Judge. The record brought up by the writ of error in this case discloses that Edgar F. Luckenbach, in January, 1908, as executor of Lewis Luckenbach (hereinafter called the plaintiff), brought suit against Frank J. McDonald (hereinafter called the defendant), on a promissory note, bearing date July 2, 1903, for the payment of $10,000, four months after date, with interest. The note was in this form:

"$10,000.                                  Philadelphia, Pa., July 2, 1903.

"Four months after date we promise to pay to the order of Lewis Luckenbach ten thousand dollars at 1336 Beach street, Philadelphia, without defalcation, for value received, with interest.

"[Signed]   The Holden Regealed Ice & Machine Co.
"Henry J. Kunzig, Prest.
"Frank J. McDonald, Secy.

"No. ——.      Due ——."

The note was indorsed:

"Henry J. Kunzig.
"Frank J. McDonald.
"Sommers N. Smith."

In the statement of claim, it was averred that this note "was indorsed by the defendant, for the purpose of giving credit to the said the Holden Regealed Ice & Machine Company, and delivered to the plaintiff's testator," etc. It was further averred:

"The said note was duly presented for payment on the date upon which it fell due, November 2, 1903, at 1336 Beach street, Philadelphia, the place of payment named in the note, and payment was demanded and then and there refused. * * * Notice of dishonor and nonpayment of said note was duly given to the defendant on the same day or on the day following the day on which the default took place, and demand was then and there made upon defendant for payment of the same, which was and has ever since been refused."

At the trial, there was no evidence produced by the plaintiff, or otherwise, that the said note was presented for payment at the office

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the Holden Regealed Ice & Machine Company, at its maturity, or at any other time or place whatever, or that any notice of the non-payment of the note, and the default of the maker in that respect, was ever given to the defendant, as indorser of the same. Indeed it is admitted that neither of these things occurred. The plaintiff, however, contended and now contends: (1) That under the circumstances disclosed by the evidence, the defendant was liable as a maker, and therefore presentment was unnecessary, or (2) if he were to be treated as an indorser, under the circumstances no notice of dishonor was required. The court below, having refused the motion to direct a verdict for defendant, gave peremptory instructions to the jury to find a verdict for the plaintiff. The reasons for doing so are given by the learned judge in his opinion refusing defendant's motion for a new trial and for judgment non obstante veredicto, as follows:

"At the argument on this motion, it was urged that, under the negotiable instrument act of Pennsylvania of May 16, 1901 (P. L. 203), the defendants could only be held as indorsers under section 63 of the act, which provides: 'A person placing his signature upon the instrument other than as a maker, drawer or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be found in some other capacity.' If there was no other evidence in the case except the note itself, with these defendants appearing as they do upon the back of the note as indorsers, of course this section would apply and they could not be held in any other capacity. It would then have been necessary for the plaintiff to prove presentment and notice. But this section has no application, because the uncontradicted evidence, aside from the note, shows that the case falls within sections 80 and 115 of the negotiable instrument act. It is provided in section 80 that 'presentment for payment is not required in order to charge an indorser where the instrument was made or accepted for his accommodation, and he had no reason to expect that the instrument will be paid if presented,' and section 115 provides that 'notice of dishonor is not required to be given to an indorser in either the following cases: * * * (2) Where the indorser is the person to whom the instrument is presented for payment; (3) where the instrument was made or accepted for his accommodation.'

"The evidence shows that the indorsers were the real parties in the transaction and the name of the ice company was only used for the purpose of carrying out the transaction between the indorsers and the lender. The plaintiff, if he had endeavored to present the note at maturity, would necessarily have presented it to either Kunzig or McDonald. These men knew there were no other parties who could pay the note but themselves in any capacity, and they had all the information which they could have received if every formality required by the law had been complied with. For these reasons the motion for judgment non obstante veredicto is overruled."

We are compelled to differ from the learned judge of the court below, in the view here taken by him of the effect of the evidence, and consequently in the conclusions of law founded thereon. We do not think that the relation of the parties to each other, as disclosed by the testimony, differs from that which appears from the instrument itself. By sections 63 and 64 of the negotiable instrument act of Pennsylvania of 1901, it is provided as follows:

"Sec. 63. A person placing his signature upon an instrument otherwise than as a maker, drawer or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be found in some other capacity.

"Sec. 64. Where a person, not otherwise a party to an instrument, places thereon his signature in blank, before delivery, he is liable as an indorser in accordance with the following rules:

"1. If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties.

"2. If the instrument is payable to the order of the maker or drawer, or is payable to bearer, he is liable to all parties subsequent to the maker or drawer.

"3. If he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee."

It is very clear that the requirement of these sections of the statute in this respect is, that one whose signature has thus been attached to a negotiable instrument, can be held to no other or greater liability than that of an indorser, unless he has, in appropriate language used for that express purpose, indicated an intention to be found in some other capacity. This intention is not to be inferred from conduct, or from language that is equivocal, much less from that which is consistent with an intent to assume only the secondary liability of an indorser, and not the primary liability of a maker.

It is true that the defendant and the two other indorsers were officers and stockholders of the company, as was also the decedent and payee of the note; that they were interested in the success of the corporation of which they were directors and stockholders; that they were, so to speak, managing directors, and as such were financing the affairs of the corporation. It appears that at a meeting in Camden for that purpose, held at the office of the company, at which all the directors, including decedent, were said to be present, it was proposed that a loan of $10,000 should be secured, in order to enable the company to finish a certain contract, for which they were to receive $16,000, as well as carry forward other business of the company. Just after the adjournment of this meeting, the payee of the note, Luckenbach, agreed to loan this money, and he afterwards gave a check for the same to one of the directors, upon condition that he should have delivered to him the note of the company, indorsed by the president thereof, and two of the directors, one of whom was the defendant. This check for $10,000 was forthwith deposited to the account and credit of the company, the maker of the note, and it is the uncontradicted evidence that it was used in the prosecution of the company's legitimate manufacturing work.

We think there is no evidence disclosed by the record, tending to show that anything else was contemplated by those who negotiated this loan, than that it was to be a loan to the corporation for the promotion of its business, for which the corporation was to be primarily bound by the promissory note which it made, and that the directors who loaned their credit by indorsement assumed the secondary liability of indorsers, and none other. All the evidence is consistent with this statement of the transaction, and no other interpretation, it seems to us, can be given to it, unless, indeed, directors and officers of a corporation interested in its successful operation cannot, in negotiating a loan for the benefit of the corporation, insure its credit by assuming only the liability of indorsers of its negotiable paper. Such a proposition, of course, can be sustained neither by reason nor authority. In the present case, all the evidence tends to show that the payee of the note had no other thought than that the security he held for his note was what it purported to be on its face, i. e., the primary liability of

the corporation, as maker, and the secondary liability of the defendant and his two colleagues, as indorsers. No apparent eagerness or zeal on the part of these indorsers and the payee, to raise this money for the purposes of the corporation, can obscure or contradict the evident intention that the form of the contract and the liability of the parties thereto, given and taken in security for the loan, should not be other than as indicated on the face of the instrument itself. In no other sense than as active and zealous business managers can they be called, as the learned judge of the court below calls them, the real parties in the transaction, and we cannot agree with him that the evidence shows that the loan was made directly to these three directors, for their own purposes or otherwise. In transactions of this kind, the corporate entity is as distinct from its officers and directors as it is from third persons with whom it transacts business, and stockholders or directors who lend their individual credit to the corporation of which they are members, by indorsement of negotiable paper, or otherwise, are entitled to the same rights and immunities which attach to the status of indorser or surety, where third parties have assumed those liabilities.

In the case before us, under the statute of Pennsylvania, as well as at common law, the contract of the defendant, as indorser of the company's note, was that his liability to pay the same was secondary, and would only become fixed after its maturity, by due presentment to the maker, and in case of refusal or default by the maker, by due notice of such default to him as indorser. In the absence of waiver on his part, no assumption that, by reason of his official position in the corporation, he might have known, or did know, that the company was unable to pay the note at maturity, can deprive the defendant of the protection of his contract, or relieve plaintiff's decedent from the requirement to give due notice of default, in order to fix his liability as indorser. The court below has not placed its decision upon any distinct ground of waiver, but defendant in error contends here that the evidence discloses such a waiver on the part of the defendant. The evidence relied upon for this contention is largely what we have already referred to as the ground upon which the court below concluded that the transaction was really a loan made to the defendant and his colleagues for their own purposes. We find, however, that as there was no express waiver of notice or protest in the instrument itself, so none can be predicated on the language or conduct of the defendant aliunde. The liability of the defendant, therefore, is determined by sections 63 and 64 of the Pennsylvania negotiable instrument act, above quoted, to be that of an indorser, and not of a maker, of the note in question. The rule quoted by defendant in error from Good v. Martin, 95 U. S. 90, 24 L. Ed. 341, that one who puts his name in blank on the back of a note at the time it is made, and before it is indorsed by the payee, must be considered a joint maker of the note, cannot be applied in face of the Pennsylvania statute.

A careful examination of all the testimony convinces us that the real transaction is what, by the face of the instrument, it purports to be, to wit, a loan made by the plaintiff in error's decedent to the corporation, the maker of the note, secured by the indorsement of the

defendant and two other directors of the company lending their credit to the maker of the note, by assuming the usual and ordinary legal liability of indorsers.

After this discussion of the grounds upon which the learned judge of the court below placed his decision, and of the contention of defendant in error in support thereof, we turn to a distinct ground urged by the defendant in error in his argument. It is thus stated in his brief:

"The two defendants were also primarily liable as makers of the note for quite another reason. They had signed the note as officers of the corporation, knowing full well that they had no authority to do so. They therefore made themselves personally responsible to the payee, as any other so-called but unauthorized agent would do."

The real contention of the defendant in error seems to be that the company had never authorized the issue of this note, and so, although it bore the signature of the president and secretary, "it was perfectly worthless as an obligation of the company." It was disclosed in the evidence that the note in question was issued without any direct and formal authorization for so doing by the board of directors, and that there was a by-law of the company reading as follows:

"No agreement, contract, or obligation, other than a check, involving the payment of money or the credit of the company for more than $1,000, shall be made without the order of the board of directors or of the executive committee duly entered in the minutes."

There was no evidence of any such formal authorization of the making of the note in question, although there was evidence tending to show that the negotiation was informally authorized at a meeting of all the directors, in the office at Camden, and also evidence that two years thereafter a formal ratification was made by the board of directors, of the making of said loan. We assume, however, in the consideration of this contention, that the requirement of the by-law referred to was not complied with, and on this assumption the position taken by defendant in error is, that the note was a nullity and worthless as such, and that therefore defendant and his co-indorsers were, to quote from defendant in error's brief, "primarily liable as makers of the note. * * * They had signed the note as officers of a corporation, knowing full well that they had no authority to do so. They therefore made themselves responsible to the payee, as any other so-called, but unauthorized, agent would do." It is apparent that the ground here urged in support of the judgment below, is quite distinct from, and has no relation to, those discussed by the court below. It is a well-settled doctrine of the law of agency which is here invoked. Passing the manifest error of asserting the liability of defendants, as makers of the note, the general proposition stated is a sound one, as applied to the facts upon which it is formulated.

The cases cited by defendant in error in support of his contention, are all in assertion of this well-known doctrine of the law of agency, thus stated in the passage quoted by defendant from Story on Agency:

"As a general rule, whenever a party undertakes to do any act as the agent of another, if he does not possess any authority from the principal therefor, or,

if he exceeds the authority relegated to him, he will be personally liable to the person with whom he is dealing, for or on account of his principal."

It is to be observed that, in the case before us, plaintiff's decedent loaned his money on the faith of what purported to be a promissory note of the company, executed by its proper officers, with full knowledge of what defect in authority, if any, there may have been for the issuance of such a note, as he himself was a co-director with the defendant and Kunzig. It is clear that in such a case, Luckenbach could not hold the indorsers of this note as its makers, as there was nothing in the written terms of the instrument by which they could be charged as such. Their only contract was that of indorsers. Assuming that they can be considered as agents who negotiated the contract between the company and the payee of the note, without authority so to do, "the obligation arising in such a case is well expressed by saying that a person professing to contract as agent for another, impliedly, if not expressly, undertakes to or promises the person who enters into such a contract upon the faith of the professed agent being duly authorized, that the authority which he professes to have does in point of fact exist." Leake on Contracts, 511. If he knows at the time that he does not possess the authority, he will be liable to a claim for the damages caused by the breach of his warranty. It was held in Polhill v. Walter, 3 B. & Ad. 114, cited in Leake, supra, that where a person accepted a bill by "procuration of the drawee, knowing that he had no authority, and the drawee repudiated the acceptance, an indorsee, though he could not charge the pretended agent as acceptor, might maintain an action against him for the false representation that he had authority to accept." Upon this principle, it was held in Weeks v. Propert, L. R. 8 C. P. 427, that the directors of a company, assuming to act on behalf of a company, are held impliedly to warrant that they had in fact the authority they assumed to exercise. And if they borrow money, and their authority depends upon the fact, whether the borrowing powers of the company have been exceeded; if such is the case, they are personally responsible for the breach of the warranty. So, in Richardson v. Williamson, L. R. 6 Q. B. 276, where the directors borrow money and the authority depends upon their obtaining the consent of a meeting of shareholders, or upon a resolution of the company, to enable them to borrow, they were taken to warrant that they were in fact in a position to do so. In the present case, the alleged unauthorized contract was not so drawn as to make the defendant, the alleged agent, a primary contracting party thereto. So, his liability as indorser expressly excluding that of a maker, if he were to be made otherwise responsible at all, it could only be for a breach of the warranty as to his right to procure the contract embodied in the promissory note, and a suit for that purpose could only be maintained on the assumption that the party who entered into the contract with the agent had no knowledge of the defect of the agent's want of authority. It is therefore quite clear that such a cause of action, even if the facts were such as to support it, is distinct and different from that sued upon in the case before us. The plaintiff below has brought his suit expressly upon

the alleged liability of the defendant, as an indorser of the promissory note in question, and has alleged the facts of presentment, demand and notice, necessary to fix his liability as such, and his contention to be allowed to recover for an entirely different cause of action, cannot now be entertained.

Under the law of agency here invoked, there are two ways in which an agent who exceeds his authority in making a contract on behalf of his principal may become personally liable to the other party to the contract, who is ignorant of such lack of authority. The first is, as we have above seen, where a person professes to contract as an agent for a principal, he impliedly warrants to the other contracting party that he in fact possesses the authority he assumes to exercise; and he becomes liable to an action for the breach of such warranty. We have already dealt with this ground of liability, as urged by the defendant in error. The second ground upon which an agent may be charged, is, where the agent signs a contract, as agent, either for an undisclosed principal or on behalf of a named principal, whose authority he exceeds without the knowledge of the third person to the contract, he may be held, under some circumstances, at the option of such third person, liable on the contract, if he have made himself a contracting party. Clearly the plaintiff below could not have availed himself of such a ground of liability, even if his cause of action had been differently stated, and he had charged defendant as a maker of the note. The defendant, in signing the note as secretary, was not signing as agent in the sense of the theory just stated, but was doing what was necessary to make the corporation of which he was an officer the maker of a promissory note. There was no other way in which a promissory note could be made by the corporation. His signature is ex officio, and he is in no sense a party to the note, within the doctrine above stated.

But an absolutely determining factor in this case is that the third party, the payee in the note, is not shown to have been without knowledge, as to the infirmity of the paper, if any. In fact, he had all the information in this respect that the defendant had.

As we said with reference to the supposed liability for a breach of warranty on the agent's part, so as to the supposed liability of defendant as a maker of the note, it is not the cause of action sued upon. The statement of claim is in affirmance of the validity of the contract set out by the note, and the liability charged and sought to be enforced is expressly the secondary liability of an indorser. We are not to be understood by what we have said, as implying that under the evidence the note in question is not to be taken, when delivered, as an existing obligation of the corporation. In the view we have taken of this case, it is unnecessary to decide the question thus raised in the argument.

The judgment below must therefore be reversed.