Nolan v. Wilcox Motor Co.

. L. C. Nolan *v.* H. E. Wilcox Motor Co.

(*Jackson*, April Term, 1917.)

1. **BILLS AND NOTES.** Accommodation paper. "Accommodation party." Liability of "indorser."

Under Negotiable Instrument Law (Laws 1899, ch. 94) section 29, defining an accommodation party as "one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person," section 63, providing that a person placing his signature on an instrument otherwise than as maker, drawer, or acceptor is deemed to be an indorser, unless he clearly indicates his intention to be bound in some. other capacity; and section 115(3), providing that notice of dishonor is not required, where instrument was made or accepted for accommodation of indorser, plaintiff president and stockholder, who indorsed a note of the corporation before delivery was an accommodation indorser for the corporation, not for himself, and failure to give him notice of dishonor relieved him from liability barring defendant's right to offset note. (*Post, pp.* 669-677.)

Cases cited and approved: Bank v. Busby, 120 Tenn., 652; Deahy v. Choquet, 28 R. I. 338; Skagit State Bank v. Moody, 86 Wash., 286; Case cited and distinguished: McDonald v. Luckenbach, 170 Fed., 434.

2. **BILLS AND NOTES.** Accommodation indorser. Insolvency of maker. Demand and notice.

Although accommodation indorser on note of corporation was one of its principal stockholders and president thereof, insolvency of corporation would not excuse demand and notice, which were conditions precedent to his liability. (*Post, pp.* 677, 678.)

Cases cited and approved: Alton v. Robinson, 21 Tenn., 340; Hudson Furniture Co. v. Harding, 70 Fed. 468; Groton v. Dallheim, 6 Me. 476; Sanford v. Dillaway, 10 Mass. 52; Farnum

v. Fowle, 12 Mass., 89; Barton v. Baker, 1 Serg. & R., 334; Buck v. Cotton, 2 Conn., 126; State Bank v. Napier, 25 Tenn., 270; Apperson & Co. v. Union Bank, 44 Tenn., 445; F. Lane & Co. v. Bank of West Tenn., 56 Tenn., 419.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—FRANCIS FENTRESS, Chancellor.

M. C. KETCHUM, for appellant.

GEORGE HARSH, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The bill was brought to recover on an account for services in the sum of $1,321. The defendant filed an answer and cross-bill interposing as offsets an item of $500, alleged to have been paid for the complainant, and a note of $3,953.47. There is no practical controversy as to the validity of the account, and it is clear from the evidence that the offset of $500 should not be allowed. The only difficulty in the case arises over the note. It is in the following words and figures:

"3953.47                Memphis, Tenn., Nov. 11, 1913.

"One year after date I promise to pay to the order of H. E. Wilcox Motor Car Co. thirty-nine hun-

dred and fifty-three 47/100 dollars, at office of H. E. Wilcox Motor Car Co., Minneapolis, Minn., 6% interest. Value received.

"[Signed]

"NOLAN BROS. MOTOR TRUCK CO.,

"By L. C. NOLAN, Pres.

"E. H. NOLAN, V. P."

This note was indorsed before delivery by L. C. Nolan and also by his brother, E. H. Nolan.

After delivery, for the purpose of conveying title, it was indorsed by the H. E. Wilcox Motor Car Company to the H. E. Wilcox Motor Company.

The chancellor held that, under section 63 and 64 of the Negotiable Instruments Law, L. C. Nolan was liable only as indorser, and, inasmuch as there was no evidence of demand of the maker, and notice of dishonor given the indorser, L. C. Nolan was not liable on the paper.

It is insisted by the defendant, under the authority of *Bank* v. *Busby,* 120 Tenn., 652, 113 S. W., 390, that parol evidence was properly introduced to show an agreement on the part of the complainant to become liable on the note as joint maker, and that the evidence shows such an agreement; but we do not think the evidence sustains the contention.

It is insisted, for the complainant, that the indorsement was for the accommodation of the maker. The defendant insists that, if the paper was an accommodation paper at all, the party accommodated was the complainant. This contention is based on

the following facts: L. C. Nolan and E. H. Nolan
were the principal stockholders of Nolan Bros. Mo-
tor Truck Company, and they had never paid in
their subscriptions to the capital stock. Indebted-
ness had been incurred in excess of the capital
stock, and the corporation was practically insolvent.
The note was indorsed by the complainant before
delivery in order to give it currency; that is, to in-
duce the defendant to accept it for the debt which
the corporation owed to the defendant.

Does the fact that the complainant was a stock-
holder in the corporation which made the note jus-
tify a conclusion that the indorsement was for the
benefit of himself, in the sense of section 115, sub-
section 3, of the Negotiable Instruments Law? That
section reads:

"Notice of dishonor is not required to be given
to an indorser in either of the following cases.
. . . (3) Where the instrument was made or
accepted for his accommodation."

We think an affirmative answer to the inquiry
just stated would be in conflict with the principles
which distinguish accommodation paper.

"The mercantile credit of parties," says Daniel,
"is frequently loaned to others by the signature of
their names as drawer, acceptor, maker, or indorser
of a bill or note, used to raise money upon, or other-
wise for their benefit. Such instruments are termed
accommodation paper. An accommodation bill or
note, then, is one to which the accommodation party

has put his name, without consideration, for the purpose of accommodating some other party who is to use it, and is expected to pay it." Daniel on Neg. Inst. (6 Ed.), section 189.

It is said, in 8 Corpus Juris, p. 255, section 402:

"An essential element of accommodation paper is that it must be loaned or signed by one party for the purpose of procuring credit for the other, generally or for a specific purpose"—Citing many authorities.

To the same effect are numerous definitions appearing under section 398, note 52. The Negotiable Instruments Law (section 29) defines the term "accommodation party" thus:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person."

Section 63 of the Negotiable Instruments Law provides that a person placing his signature on an instrument otherwise than as maker, drawer, or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity. Under this section it is held that persons putting their names on the back of a note before delivery for the accommodation of the maker are accommodation indorsers. *Deahy v. Choquet*, 28 R. I., 338, 67 Atl., 421, 14 L. R. A. (N. S.), 847. The party accommodated need not be a party to the note, and such accommodation may originate in the request or suggestion of a third

person; but, of course, the accommodation must be with the knowledge and assent of the party accommodated, in order to hold the latter bound to the accommodation party, when he has paid the obligation. 8 C. J., 254, 255. Having made payment to the holder, the accommodation party may sue the accommodated party for reimbursement, since the relation between them is in effect that of principal and surety; the accommodation party being the surety. 8 C. J., p. 269, section 422; page 270, section 424; page 272, section 425; Daniel, Neg. Inst. (6 Ed.), section 1342.

Now, if it be true, as matter of law, that one who indorses an accommodation paper for a corporation becomes an accommodation party, not only to the corporation itself, but to the individual stockholders as well, then a debt is raised against them in favor of the accommodation party without their consent, and it may be even without their knowledge. It would follow that, instead of incorporation protecting stockholders from individual liability for the debts of the corporation, they could be made personally liable at the will of the managing officers of the corporation, and any one who might choose to become its accommodation indorser, or an accommodation party for it in any form. So it cannot be true that the mere fact of indorsing for the accommodation of a corporation raises a personal liability against the stockholders; nor is this conclusion invalidated by the fact that the accommodation party

is himself one of the stockholders. A corporation
is a legal person, distinct from its stockholders and
from each of them. If the stockholder be not per-
sonally bound upon the debt of the corporation cov-
ered by the paper to which he lends his name, it is
not possible to say that it is for his accommodation,
unless it be laid down as a true principle that what-
ever accommodates the corporation as a legal entity
necessarily accommodates in law each of its stock-
holders, in the sense of the law merchant. This
would be equivalent to saying that, whenever a
stockholder goes upon an accommodation paper for
the corporation, he accommodates himself and is in
effect only a joint maker, which position is untena-
ble. The party accommodated is defined as "he to
whom the credit of the accommodation party is
loaned." 8 C. J., p. 254, section 401. The inquiry
always is "as to whom did the accommodation party
loan his credit as a matter of fact." Id.

Can it be said that the accommodation party lends
his credit to himself? It is true that, when a cor-
poration is accommodated, there is an incidental
benefit conferred upon all of its stockholders; but
"the fact that one derives some incidental benefits
from the paper will not make it an accommodation
paper as to him." Id. Thus a note given by a bank
director to the bank for the overdue interest on an-
other note held by the bank, so as to enable it to pass
the inspection of the bank examiner, is a note for

the accommodation of the maker of the other note, and not for the accommodation of the bank, and the bank can enforce it, although no consideration therefor moved to the director. *Skagit State Bank* v. *Moody,* 86 Wash., 286, 150 Pac., 425, L. R. A., 1916A, 1215; 8 C. J., 255, note.

The case of *McDonald* v. *Luckenbach,* 170 Fed., 434, 95 C. C. A., 60, is in its facts strikingly like the case before us. In that case it appeared the defendants, who were respectively the president and secretary, and also directors and large stockholders in the corporation, indorsed a note made by the corporation to raise money. When the note matured the company had no money to pay it, as defendants knew. It was held that the defendants were liable only as indorsers, and could not be legally proceeded against without presentment and notice of dishonor. It was insisted in that case that the defendants were really liable as makers, and therefore notice of dishonor was unnecessary, and also that under the circumstances of the particular case no notice of dishonor was necessary, because the defendants were the officers of the company upon whom demand would have to be made, and were fully advised of the fact the the company was without funds to pay the note. In the opinion it was said:

"In transactions of this kind, the corporate entity is as distinct from its officers and directors as it is from third persons with whom it transacts business, and stockholders or directors who lend their indi-

vidual credit to the corporation of which they are members, by indorsement of negotiable paper, or otherwise, are entitled to the same rights and immunities which attach to the *status* of indorser or surety, where third parties have assumed those liabilities.''

In addition. the court said:

''The contract of the defendant, as indorser of the company's note, was that his liability to pay the same was secondary, and would only become fixed after its maturity, by due presentment to the maker, and, in case of refusal or default by the maker, by due notice of such default to him as indorser. In the absence of waiver on his part, no assumption that, by reason of his official position in the corporation, he might have known, or did know, that the company was unable to pay the note at maturity, can deprive defendant of the protection of his contract, or relieve plaintiff's decedent from the requirement to give due notice of default, in order to fix his liability as indorser. The court below has not placed its decision upon any distinct ground of waiver, but defendant in error contends here that the evidence discloses such a waiver on the part of the defendant.: The evidence relied upon for this contention is largely what we have already referred to as the ground upon which the court below concluded that the transaction was really a loan made to the defendant and his colleagues for their own purposes. We find, however, that, as there was no express waiver of notice or

protest in the instrument itself, so none can be predicated on the language or conduct of the defendant aliunde. The liability of the defendant, therefore, is determined by sections 63 and 64 of the Pennsylvania Negotiable Instruments Act, above quoted, to be that of an indorser, and not of a maker, of the note in question.''

We are again referred to *Bank* v. *Busby* as authority for the proposition that a stockholder in a corporation, circumstanced as was the complainant in the present case, on indorsing the company's note before delivery, if such indorsement was for accommodation, must be held to have indorsed for his own accommodation, and that he could not therefore be entitled to notice of the dishonor of the paper. The decision in the case of *Bank* v. *Busby* was based primarily upon the fact that the evidence showed that all the stockholders who indorsed the note had, at the time, agreed among themselves to be joint makers. Of course, stockholders could make a note, all as principals, for the accommodation of their corporation. If they were such principals, no question concerning notice of dishonor could arise; nor do we see that it could be said in any legal sense that they were making the note for the accommodation of themselves. If it was meant that, because the same parties had been bound on a previous note, or notes, they accommodated each other by executing a renewal as principals, while this may have been an accommodation in the sense of a benefit to each other, yet

it was not a lending of credit as before explained, and could have no bearing upon the operation of section 115 of the Negotiable Instruments Law. We are unable, therefore, to follow *Bank* v. *Busby* on the point just indicated.

As to the point that there was no need of presentment, or notice of dishonor, because the Nolan Bros. Motor Truck Company was insolvent, and known to be so by complainant, and because he was one of the principal stockholders and president, we need only say that this point is fully shown by the authorities to be without merit. *Alton* v. *Robinson,* 2 Humph. (21 Tenn.), 340, 344, 345; *Hudson Furniture Co.* v. Harding, 70 Fed., 468, 17 C. C. A., 203, 34 U. S. App., 148, 30 L. R. A., 513, 519, 520  That insolvency will not excuse demand and notice, see, also, *Groton* v. *Dallheim,* 6 Greenl. (6 Me.), 476; *Sanford* v. *Dillaway,* 10 Mass., 52, 6 Am. Dec., 99; *Farnum* v. *Fowle,* 12 Mass. 89, 7 Am. Dec. 35; *Barton* v. *Baker,* 1 Serg. & R. (Pa.), 334, 7 Am. Dec., 620. And this is true, though the indorser indorsed the note of the insolvent for the purpose of giving it credit  *Buck* v. *Cotton,* 2 Conn., 126, 7 Am. Dec., 251. Moreover, no such exception is made in the Negotiable Instruments Law, which purports to cover the subject.

It is true, as insisted by defendant and cross-complainant, that where the note is on its face payable at the business place of the holder, it is sufficient that it be there on the day, in the hands of the holder, or his agent, ready for payment, and that no

funds are present, and no one calls to make payment; no formal or clamorous demand in such case being necessary. But this does not dispense with the necessity of giving notice to the indorser of the failure of the maker to pay. *State Bank* v. *Napier,* 6 Humph. (25 Tenn.), 270, 44 Am. Dec., 308; *Apperson & Co.* v. *Union Bank,* 4 Cold. (44 Tenn.), 445; *F. Lane & Co.* v. *Bank of West Tenn.,* 9 Heisk. (56 Tenn.), 419, 433-436. Moreover, in the case before us, the holder was the H. E. Wilcox Motor Company, while the place of payment was the office of the H. E. Wilcox Motor Car Company, a different corporate entity. So it does not appear why the usual formal presentment should not have been made. However, as no notice was given to the indorser, the result would be the same—the release of the indorser.

On the grounds stated, we are of the opinion that the chancellor committed no error in disallowing the two offsets and decreeing in favor of the complainant upon his account. His judgment is therefore affirmed.

BUCHANAN, J., dissents.