**STEFFENS, Exrx v SINKEY et**

Ohio Appeals, 1st Dist, Butler Co

Decided March 28, 1932

214

Shotts & Millikin, Hamilton, and Pogue, Hoffheimer & Pogue, Cincinnati, for plaintiff in error.

C. E. Burke, Middletown, and Walter S. Harlan, Hamilton, for defendant in error, W. A. Sinkey.

215

HAMILTON, J.

We pass for first consideration to the question raised by the fourth defense, for the reason that a conclusion on that question is determinative of the case.

The fourth defense is, as above stated, no demand of payment was made on the maker, the Washington Motor Company, and "no notice of non-payment or notice of dishonor was ever served on or given to this defendant, or to Herman Steffens during his lifetime."

It is undisputed in the record, and admitted, that no notice under the statute, as required by the Negotiable Instrument Act, was given.

Sec 8194, GC, provides: "Except as here-

in otherwise provided, when a negotiable instrument has been dishonored by non-acceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser. Any drawer or indorser to whom such notice is not given is discharged".

This section was construed in the case of **Rockfield v First National Bank, 77 Oh St, 311, 83 NE, 392, 14 L.R.A., (N.S.), 842,** the syllabus of which case reads as follows: "Prior to the taking effect of the act of April 17, 1902, entitled 'An act to establish a law uniform with the laws of other states on negotiable instruments,' a third person placing his name in blank on the back of a promissory note before or at the time of delivery, assumed the position of a surety unless a different understanding between the parties was shown, and he did not thereby become an indorser in the legal sense of the term, nor contract any liability but that of maker. **Ewan v The Brooks-Waterfield Co., 55 Oh St, 596,** (45 NE, 1094, 35 L.R.A., 786, 60 Am. St. Rep., 719). But by force of said act (§§3171, 3173h, 3173i, 3173k, 3173q, 3174g and 3178a, Revised Statutes), such person so placing his name on the back of the paper by blank endorsement is an indorser and cannot be held in any other capacity. As such he is entitled, in order to render him liable, to notice of demand upon those who are primarily liable, and failing such demand and due notice to him, he is discharged."

The claim of the defendant in error is that this section §8194, GC, and the decision in the Rockfield case, are not applicable, for the reason that the indorsement on the note in suit was not a commercial indorsement; that the indorsers were, in law, makers, and therefore not entitled to notice of dishonor, as provided in the statute. In the Rockfield case, in the course of the opinion, Judge Spear states, at pages 327 and 328 (83 NE, 394):

"The contention that the provision (§3173k) to the effect that every indorser undertakes to pay if the instrument is dishonored and he has due notice applies only to general indorsers, we think untenable. The language forbids it. It is: 'Every indorser who indorses without qualification,' etc. The word 'every' is a term of inclusion. It embraces every party who, by previous provisions, is classed as an indorser unless his indorsement has been qualified by appropriate words. Nor is the obligation as indorser imposed on the stranger

an unreasonable one for if not content to assume the position of indorser, the opportunity to indicate upon the paper his intention to be bound in some other capacity is given him.

"The contention that these later provisions relate only to general indorsers rests wholly on the assumption that in placing his name on the back in blank the stranger himself fixes his own position and that he has conclusively declared himself a maker; that is, that he has placed his name as maker. But it seems sufficient answer to this to say that he has not and could not, by a mere blank indorsement, so place himself, because the statute fixes his position. That position is important only as it relates to his liability, and the statute has said that the liability is 'as indorser.' An indorser is not a maker or a drawer; not one primarily liable."

The note in the Rockfield case was quite similar to the note in question here, except the payee was not an indorser. It was a note executed to the payee, the First National Bank of Springfield, and was given by the Springfield, Charleston, Washington & Chillicothe Railway Company, signed by the president and secretary. On the back of the note were the several names, including that of E. H. Ackerson, the secretary of the company, and it was sought to hold all the indorsers as makers, including the secretary Ackerson.

The trial court and the Circuit Court held the law to be as claimed by the defendants in error in this case. The Supreme Court, however, reversed the Circuit Court and the Court of Common Pleas, construing the law to be that, under those circumstances, the placing of the name on the back of the blank indorsement is a commercial indorsement of the paper, and not to be held in any other capacity, and, as such, in order to render him liable, he is entitled to notice of demand upon those who are primarily liable, and, failing such demand and due notice to him, he is discharged.

This case would seem to determine the case at bar in favor of the plaintiff in error.

Defendants in error on the proposition under consideration rely on the case of **York v Franklin Tractor Co., 22 OLR, 377,** decision by the Court of Appeals of Franklin County, wherein the court held that, where the directors of a corporation participate in the making of a loan and the giving of a note of the corporation as maker, and sign as indorsers, they are liable without notice of dishonor. The York case was followed by this court in the case of **Fairbanks v Armentrout, 3 Ohio Law Abs, 373.** Neither of these cases is reported in the Ohio Appellate Reports, and may therefore he considered as unreported cases.

We have before us the case of McDonald v Luckenbach, 170 F., 434, decision by the Third Federal Circuit Court of Appeals, cited by plaintiff in error in support of the proposition that the lending of credit to a corporation by the directors, by indorsing the paper or the note, does not take them out of the rule relating to commercial indorsement. In the Luckenbach case the court states in the opinion, at page 437:

"It is very clear that the requirement of these sections of the statute in this respect is, that one whose signature has thus been attached to a negotiable instrument, can be held to no other or greater liability than that of an indorser, unless he has, in appropriate language used for that express purpose, indicated an intention to be found in some other capacity. This intention is not to be inferred from conduct, or from language that is equivocal, much less from that which is consistent with an intent to assume only the secondary liability of an indorser, and not the primary liability of a maker.

"It is true that the defendant and the two other indorsers were officers and stockholders of the company, as was also the decedent and payee of the note; that they were interested in the success of the corporation of which they were directors and stockholders; that they were, so to speak, managing directors and as such were financing the affairs of the corporation. It appears that at a meeting in Camden for that purpose, held at the office of the company, at which all the directors, including the decedent, were said to be present, it was proposed that a loan of $10,000 should be secured, in order to enable the company to finish a certain contract, for which they were to receive $16,000, as well as carry forward other business of the company. Just after the adjournment of this meeting, the payee of the note, Luckenbach, agreed to loan this money, and he afterwards gave a check for the same to one of the directors, upon condition that he should have delivered to him the note of the company, indorsed by the president thereof, and two of the directors, one of whom was the defendant. This check for $10,000 was forthwith deposited to the account and credit of the company, the maker of the note, and

it is the uncontradicted evidence that it was used in the prosecution of the company's legitimate manufacturing work.

"We think there is no evidence disclosed by the record, tending to show that anything else was contemplated by those who negotiated this loan, than that it was to be a loan to the corporation for the promotion of its business, for which the corporation was to be primarily bound by the promissory note which it made, and that the directors who loaned their credit by indorsement assumed the secondary liability of indorsers, and none other. All the evidence is consistent with this statement of the transaction, and no other interpretation, it seems to us, can be given to it, unless, indeed, directors and officers of a corporation interested in its successful operation cannot, in negotiating a loan for the benefit of the corporation, insure its credit by assuming only the liability of indorsers of its negotiable paper. Such a proposition, of course, can be sustained neither by reason nor authority. In the present case, all the evidence tends to show that the payee of the note had no other thought than that the security he held for his note was what it purported to be on its face, i.e., the primary liability of the corporation, as maker, and the secondary liability of the defendant and his two colleagues, as indorsers. No apparent eagerness or zeal on the part of these indorsers and the payee, to raise this money, for the purposes of the corporation, can obscure or contradict the evident intention that the form of the contract and the liability of the parties thereto, given and taken in security for the loan, should not be other than as indicated on the face of the instrument itself. In no other sense than as active and zealous business managers can they be called, as the learned judge of the court below calls them, the real parties in the transaction, and we can not agree with him that the evidence shows that the loan was made directly to these three directors, for their own purposes or otherwise. In transactions of this kind, the corporate entity is as distinct from its officers and directors as it is from third persons with whom it transacts business, and stockholders or directors who lend their individual credit to the corporation of which they are members, by indorsement of negotiable paper, or otherwise, are entitled to the same rights and immunities which attach to the status of indorser or surety, where third parties have assumed those liabilities."

This rule, laid down in the Luckenbach case, is followed in the case of Murray v Third National Bank of St. Louis, (C.C.A.), 234 F., 481, and in the decisions in many of the states.

In Brannan on "Negotiable Instruments" (5th Ed.), page 868, the author states the rule and refers to one case holding that directors indorsing corporate notes are not entitled to notice of dishonor. That case is Mercantile Bank v Busby, 120 Tenn., 652, 113 SW, 390, and states: "This case is clearly wrong, and in Nolan v Wilcox Co., 137 Tenn., 667, 195 SW, 581, the court refused to follow it, and it must be regarded as overruled upon the point indicated."

We are therefore confronted with the proposition that the only two cases holding that directors who indorse notes of the company for credit to the company are not entitled to notice of dishonor are the cases of York v Tractor Co., supra, and Fairbanks v Armentrout, supra, two unreported cases of the Court of Appeals of Ohio. We are of opinion that these cases do not state the law on the question of notice, and we hold in line with the federal decisions referred to, and the Rockfield decision, supra, that the plaintiff in error was entitled to notice of dishonor of the note sued upon, and, it being conceded that no such notice was given, the Court of Common Pleas erred in rendering judgment for the plaintiff below against the defendant, plaintiff in error here, and that judgment will be reversed and judgment entered here for the plaintiff in error.

Since this disposes of the case, we do not pass upon the other questions of error at this time. Since this decision is in conflict with the decision in York v. Tractor Co., supra, the case will have to be certified to the Supreme Court of Ohio for final determination of the question.

The other questions of error will be reserved, and will be further considered should the Supreme Court remand the case to this court for further proceeding.

The other two cases will be retained by this court pending the decision by the Supreme Court of Ohio in the case here considered.

Judgment reversed and judgment for plaintiff in error.

ROSS, PJ, and CUSHING, J, concur.