Argued at Pendleton October 26, affirmed December 21, 1920.

## FIRST NAT. BANK *v.* BACH.

(193 Pac. 1041.)

**Trial—Jury Trial Waived Where Both Parties Moved for Directed Verdict.**

1. Where each party moved for a directed verdict, the right to trial by jury was waived, and the question was submitted to the court as a matter of law whether verdict should be directed for plaintiff or defendant.

**Pleading—Conclusions of Pleader cannot Vary Liability of One Executing Note.**

2. Where a note with the addition of defendant's name on the back was set forth in the complaint, defendant's liability is fixed by

---

1. Effect of request of both parties for directed verdict, see notes in 6 Ann. Cas. 545; 13 Ann. Cas. 372; Ann. Cas. 1913C, 1342.

2. On character under uniform negotiable instruments law, of one who places his name on back of note prior to or at time of delivery, see notes in 14 L. R. A. (N. S.) 842, and L. R. A. 1916D, 223.

the instrument, which controls conclusions of the pleader as to liability.

### Bills and Notes—One Placing His Name on the Back of a Note Held an Indorser.

3. Under Section 7855, Or. L., declaring that anyone placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed an indorser unless he clearly indicates his intention to be bound in some other capacity, and in view of Section 7856, declaring that an individual not otherwise a party who places his signature on a note in blank before delivery is liable as an indorser, defendant, who placed his name on the back of a note without any notation indicating his intention to be otherwise bound, is liable only as an indorser.

### Evidence—Words Varying Indorser's Liability must Appear on the Instrument Itself.

4. Under Sections 7855, 7856, Or. L., words varying the liability of one placing his name on the back of a negotiable instrument from that of a mere indorser must appear on the instrument itself as part of the indorsement, for not only is this so required by statute, but promissory notes being in a sense accepted as current money by merchants should carry a full statement of all of their conditions.

### Bills and Notes—To Hold Indorser, Presentment must be Shown or Excused.

5. While Section 7872, Or. L., provides that presentment is not required in order to charge an indorser, where the instrument was made or accepted for his accommodation, and Section 7907 provides that notice of dishonor is not necessary in such case, in all other cases presentment for payment as provided for by Section 7863 and notice of dishonor in accordance with Section 7881 must be given to charge an indorser, or the failure excused.

### Bills and Notes—Indorser Held not Person Accommodated, and so Presentment and Notice of Dishonor was Necessary—"Accommodation Party."

6. Where a debtor accepted drafts drawn by defendant, such drafts being discounted on defendant's indorsement, and on maturity of acceptances a note was given for the amount of the drafts which defendant indorsed for the accommodation of his debtor, the instrument was not given for defendant's accommodation, nor was he the party "accommodated," within Or. L., § 7821, defining an "accommodation party" as one who signs an instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his money to another, the accommodation being to the debtor; hence, to hold defendant, it is essential to show presentment for payment and notice of dishonor.

---

4. Parol evidence as admissible to vary or explain the contract implied from the regular indorsement of a bill or note, see note in 4 L. R. A. 764.

From Union: JOHN W. KNOWLES, Judge.

In Banc.

After alleging its own corporate existence and that the defendants Bach and Robinson constituted a partnership styled "Summerville Lumber Company," the plaintiff avers in its complaint:

"That the plaintiff paid to the defendant J. D. Casey the sum of one thousand dollars upon two drafts of five hundred dollars each, drawn by him and accepted by defendant Summerville Lumber Company, in consideration of which all of the above-named defendants made, executed, and delivered to the plaintiff their promissory note in writing, of which the following is a copy:

"$1,000.00                    Elgin, Oregon, July 1, 1912.

"Ninety days after date, without grace, I, we, or either of us, promise to pay to the order of The First National Bank of Elgin, Oregon, one thousand and 00-100 dollars for value received, with interest after maturity until paid, at the rate of eight per cent per annum. Principal and interest to be paid in United States gold coin at The First National Bank of Elgin; and in case suit or action is instituted to collect this note, or any portion thereof, I promise to pay such an additional sum as the court may adjudge reasonable attorneys' fees in said suit or action.

"SUMMERVILLE LUMBER Co.
"By P. S. ROBINSON.
"P. S. ROBINSON.
"W. B. BACH.
"J. D. CASEY.

"No. 5946
"Due Oct. 1–12.

"That although the names of defendants P. S. Robinson, W. B. Bach, and J. D. Casey appear on the back of said note, it was so signed when issued and before delivery to plaintiff."

Further stating that no part of the note has been paid except specified interest, that the plaintiff is the

holder of the note, and that a certain sum is a reasonable attorneys' fee, the plaintiff demands judgment.

The answer of the defendant Casey, who alone appeared, denies every allegation of the complaint except the incorporation of the plaintiff, its location, and the copartnership of Bach and Robinson, and except as further stated. In the view here taken of the case, it is not necessary to consider the new matter of the answer, which was challenged by the reply.

A motion for nonsuit made by the defendant Casey at the close of plaintiff's case was denied, and, after all of the evidence was in, both parties moved the court for a directed verdict. The court denied both motions and submitted the case to the jury, which found a verdict for the defendant. From the resultant judgment the plaintiff appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. L. Denham.*

For respondent there was a brief over the names of *Messrs. Cochran & Eberhard* and *Mr. Charles H. Finn,* with oral arguments by *Mr. George T. Cochran* and *Mr. Colon R. Eberhard.*

BURNETT, J.—1. Both parties waived trial by jury by moving for a directed verdict. They thus submitted to the court whether as a matter of law a verdict should be directed for the plaintiff or for the defendant. Under such circumstances, the court should have decided the question: *Patty* v. *Salem Flouring Mills Co.,* 53 Or. 350, 357 (96 Pac. 1106, 98 Pac. 521, 100 Pac. 298). In the instant case this

matter of practice is of small importance, for in our opinion the judgment rendered was the proper result.

2–4. We glean from the record that the trial court submitted the case to the jury under the direction that, if the name of Casey was indorsed on the note prior to its delivery to the bank, he should be held liable for the full amount of the note, but if that indorsement was placed on the note after its delivery to the bank, he could not be held. The essence of the averment concerning the note is that the defendants executed the instrument by the signature of the partnership as maker under the name of "Summerville Lumber Company," and that the names of the other defendants appeared on the back before delivery to the plaintiff. The plaintiff relies greatly upon certain language used by Mr. Justice Moore in *Lumbermen's Nat. Bank* v. *Campbell,* 61 Or. 123 (121 Pac. 427), to the effect that where anyone writes his name on the back of a note at the time it is issued, for the purpose of procuring credit for the maker, or if the one so signing receives a part of the proceeds for which the obligation is given, he is an original maker. A careful study of that case discloses that the opinion in that part of it was discussing the law as it existed prior to the enactment of our negotiable instruments law, codified in Chapter IV, Title LXIII, Or. L. That this is the proper construction of the opinion is plain from the quotations later made in the deliverance of Mr. Justice Moore, setting out excerpts from the Negotiable Instruments Act and holding in effect that the mention of requirements of the act excludes the operation of all other conditions, with the result that that legislation constitutes the sole and exclusive standard by which questions relating to negotiable paper must be adjudicated.

It is said in Section 7855, Or. L., that anyone placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity. In Section 7856 we learn that, where an individual not otherwise a party to the instrument places thereon his signature in blank before delivery, he is liable as an indorser. Section 7858 prescribes the obligation of the indorser who indorses without qualification. Among other things, he engages that on due presentment of the instrument it shall be accepted or paid or both, as the case may be, according to its tenor, and that, if it be dishonored and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder or to any subsequent indorser who may be compelled to pay. The time when the instrument must be presented is prescribed in Section 7863, to the effect that, if it is not payable on demand, it must be paid on the day it falls due. We learn in Section 7875 that

"The instrument is dishonored by nonpayment when (1) it is duly presented for payment but payment is refused or cannot be obtained or (2) presentment is excused and the instrument is overdue and unpaid."

Again, according to Section 7881—

"Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

98 Or.—22

It thus appears that the rule is that notice of dishonor must be given to an indorser, if he is to be held for payment of the amount due upon the instrument. The exception to the rule is found in two sections of the statute:

"Presentment for payment is not required in order to charge an indorser, where the instrument was made or accepted for his accommodation, and he has no reason to expect that the instrument will be paid if presented": Section 7872.

"Notice of dishonor is not required to be given to an indorser in either of the following cases: * * (3) where the instrument was made or accepted for his accommodation": Section 7907.

Section 7821 reads thus:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

The consequence of this definition is the abolition of all previous decisions to the effect that, if the holder knew a party had signed for accommodation only, he must be treated as a surety, so that indulgence to the real debtor would in some instances discharge the accommodation party. The law now is, as laid down in this section, that an accommodation party can claim no benefit as such, but he is liable according to the face of his undertaking, the same as if he were himself financially interested in the transaction.

It is said in the complaint that the plaintiff paid to Casey $1,000 upon two drafts, which transaction

formed the consideration for all of the defendants making the note in controversy. The effort of the pleader in stating that the defendants made, executed and delivered the promissory note is to hold Casey as a maker and so not entitled to notice of dishonor. But this legal conclusion which the plaintiff essays to fasten upon the instrument is controlled by the instrument itself quoted in the complaint, and the subsequent allegation of the complaint to the effect that the name of Casey appeared on the back of the note: *Somers* v. *Hanson,* 78 Or. 429 (153 Pac. 43); *Cranston* v. *California Ins. Co.,* 94 Or. 369 (185 Pac. 292). Under Section 7855, Or. L., Casey was clearly an indorser, for his name appears in blank on the back of the note and there are no words whatever indicating his intention to be bound in any other capacity than as such indorser. In *Overland Auto Co.* v. *Winter* (Mo. App.), 180 S. W. 561, later affirmed in 277 Mo. 425 (210 S. W. 1), it is held that the words varying the indorser's liability must appear upon the instrument itself as part of the indorsement which he signs. The reason of this is manifest. Promissory notes or bills of exchange are in a certain sense "current money among the merchants," and the convenience of business is best subserved by their carrying the full statement of their terms and conditions with them, so that by inspection of the paper all of the relations of the parties may be determined. This principle is codified in section 7855, to the effect that a name alone on the back of a note makes the writer an indorser.

5. It is a principle well settled that, in an action against an indorser, the complaint must show presentment of the instrument and demand of payment from the maker, and prompt notice thereof to the

indorser, or disclose an excuse for not doing so bringing the pleader within the statutory exceptions. In this instance, the complaint does not attempt to comply with either the rule or the exception. No pretense is made of presentment to the Summerville Lumber Company or demand of payment, or of any notice of dishonor given to Casey as indorser, in time or out of time. The mere fact that the money was paid to Casey on the acceptances mentioned in the complaint does not show that the instrument was made or accepted for his accommodation.

6. We have seen in Section 7821 the signification of an accommodation party. Inferentially at least, we draw from the same section the meaning of the accommodated party or one for whose accommodation the instrument is made. An essential ingredient to be considered in determining who is the accommodated party is found in the element that he is the one to whom credit is loaned, and not the one who loans his credit. In *Noland* v. *Wilcox Motor Co.*, 137 Tenn. 667 (195 S. W. 581), this subject is discussed. Quoting from 8 C. J., page 855, Section 402, it is said there:

"An essential element of accommodation paper is that it must be loaned or signed by one party for the purpose of securing credit for another party generally or for a specific purpose."

And after allusion to sundry sections of the negotiable instruments law of that state, identical in terms with ours, it is said, referring to an accommodation maker or indorser:

"Under this section it is held that persons putting their names on the back of a note before delivery for the accommodation of the maker are accommodation indorsers: *Deahy* v. *Choquet,* 28 R. I. 338 (67 Atl.

421, 14 L. R. A. (N. S.) 847). The party accommodated need not be a party to the note, and such accommodation may originate in the suggestion or request of a third person."

In the instant case the evidence in the bill of exceptions shows that this transaction originated as between Summerville Lumber Company and Casey in a debt owing by the firm to the latter, for which he had drawn upon the concern, and it had accepted his drafts. Thereupon the bank discounted them on his indorsement in blank. When the acceptances matured, the note in question was given to take them up and they were returned to Casey. In no respect was credit loaned to Casey. On the other hand, he loaned his credit to the partners. They were the parties who could not pay, needed help, and borrowed Casey's name and credit. Consequently, the instrument was not made or accepted for his accommodation. The ruling principle of accommodating and being accommodated, as used in the Negotiable Instruments Act, is found in the loan of credit to another. The one who loans is the accommodator. The one who receives the loan of credit is the party accommodated. In a sense, it was a favor or accommodation to Casey to collect the money on the debt owing to him by the partners. In another sense, it was an accommodation to the bank to have Casey's name with the others on the note and thus increase its discounts of commercial paper, with its increment of interest. But in the strict legal sense, the only party for whose accommodation the instrument was made was the firm, Summerville Lumber Company. To it alone did Casey loan his credit.

The result is that there is no showing by way of pleading that Casey was anything else than an indorser. Further, it does not 'appear that he was either notified of any presentation to or demand upon the principal debtor for payment or that there was any excuse for not doing so. Neither does it appear in the evidence as reported that the instrument was made or accepted for Casey's accommodation, so as to excuse the holder from making presentment and giving notice of dishonor.

In *Murray* v. *Third Nat. Bank,* 234 Fed. 481 (148 C. C. A. 247), commenting upon the statute corresponding to our Section 7872, dispensing with presentment for payment and notice thereof where the instrument was made or accepted for the accommodation of the indorser, the court used this language:

The section applies "only to cases where the indorser is the primary debtor, the reason for the rule being that no one is bound to indemnify the primary debtor, and he is thus no more entitled to presentment, demand, or notice than if his true character had appeared on the paper."

In *Overland Auto Co.* v. *Winter* (Mo. App.), 180 S. W. 561, it appeared that Winter and Strang together bought an automobile from the plaintiff and in payment for the same issued a note due ninety days after date, signed "C. F. Winter" and indorsed on the back "W. B. Strang." The court held there that parol evidence could not be admitted to change the legal effect of the note and indorsement sued upon; that pleading an instrument according to its legal effect is controlled by the document itself copied into the pleading; and that the mere fact that the indorser became part owner of the automobile for which the note was given does not

dispense with the notice due him on nonpayment because the parties chose to contract with him solely as an indorser. In other words, as a memorial of their transaction the parties resorted to a negotiable instrument signed by one of the debtors and indorsed by the other, with the result that parol evidence could not be admitted to contradict or vary the legal effect of the writing thus adopted by all concerned.

In *Geller etc. Hardware Co.* v. *Drozda* (Mo. App.), 217 S. W. 557, the defendant had a vacant store building which he desired to rent. The plaintiff induced Gremer to lease the store, and sold him a stock of hardware on credit, which was installed in that store. The defendant indorsed Gremer's note given to the plaintiff for merchandise. It was there held that inasmuch as no credit was loaned to Drozda, but rather that it was loaned by him to the maker of the note, Drozda was a mere indorser, entitled to presentment, demand and notice of dishonor. The court fortifies its construction of the statute corresponding to our Sections 7872 and 7909 covering cases where the instrument was made for the accommodation of the indorser by this excerpt from the opinion of the supreme court of Missouri in *Overland Auto Co.* v. *Winter* (Mo. App.), 180 S. W. 561:

"The evidence offered by the plaintiff shows that the defendant was not in that sense an accommodated party; he was not one for whom anybody gratuitously executed the note. He was accommodated in the sense that he was benefited by the transaction, but he was not accommodated in the sense that there was a lending of credit to him. He was an ordinary indorser and therefore entitled to notice of dishonor before he could be held, and no notice was given."

In *Morris County Brick Co.* v. *Austin,* 79 N. J. Law, 1273 (75 Atl. 550), Austin as broker had effected a sale of bricks for the plaintiff and was anxious to receive his commission. The plaintiff refused to pay the commission unless Austin would indorse the note of the party to whom the bricks were sold. He did indorse the note, and received his commission from the plaintiff. Commenting upon this feature in connection with the statute, the court said:

"Austin did not receive value in any sense. What he received was the payment, out of the discounted note, of the commission due him. That was only the payment of a prior debt, not the giving of value for Austin's indorsement."

The conclusion is, then, that Casey was liable only as an indorser, for want of words appearing upon the instrument imposing upon him a different liability; that both in the pleading and in the evidence there is an utter absence of any showing that demand was made upon the principal firm for payment and notice given to Casey, or that the latter was in such a situation as a party accommodated as to dispense with such notice of dishonor.

Both as a matter of pleading and of evidence the judgment was right in its result and must be affirmed.                              AFFIRMED.