Argued January 18; affirmed April 19, 1932

RUBY *v.* WEST COAST LUMBER CO. ET AL.

(10 P. (2d) 358)

*Henry S. Westbrook,* of Portland, for appellant.

*L. A. Liljeqvist,* of Marshfield (Liljeqvist & Swanton, of Marshfield, on the brief), for respondents.

BEAN, C. J. The trade acceptances in question were issued for the logs ordered by A. C. Ruby and his partner George Finley and the West Coast Lumber Company, which was a corporation organized on March 22, 1930. A brief history of the transactions, necessary for an understanding of the case, is about as follows: Plaintiff A. C. Ruby and his partner George Finley were interested in a sawmill at Coquille.

They did business under the name of the West Coast Lumber Company. Prior to the incorporation of that company defendant David D. Hall was their manager, and after the incorporation, until he was succeeded by Louis Charneski. Both Hall and Charneski had authority to issue trade acceptances for the corporation. After the logs were delivered into the boom of the mill and scaled, trade acceptances were issued by the corporation, which took over the partnership business and mill. The terms of the trade acceptances were fixed by the manager of the corporation and the McCarthys, the corporation acting under the directions of its president, A. C. Ruby. At the time the corporation was organized Ruby and Finley each subscribed for $100,000 of its stock. After the trade acceptances were issued and accepted by the corporation, through its manager or its manager and A. C. Ruby they were forwarded to Mr. Ruby at Portland for his endorsement and guaranty. We set forth one of the trade acceptances, which is similar to the others, except as to amounts and the fact that Mr. Ruby did not sign all of them as president of the West Coast Lumber Company, as follows:

"Trade Acceptance. The obligation of the Acceptor of this Bill arises out of the Purchase of Goods from the Drawer. West Coast Lumber Co., Acceptor. David D. Hall, Manager.

"No. 3809, Coquille, Oregon. Date April 28, 1930. $7,302.68. On July 20, 1930, pay to the order of Dennis McCarthy for 663,880 ft. Fir logs Brand-Seven Thousand three hundred two and 68/100 Dollars Value received and charge the same to the account of The West Coast Lumber Co., Coquille, Oregon. (Sgd.) Dennis McCarthy."

The West Coast Lumber Company accepted said trade acceptance by endorsement written across the face thereof, substantially as follows:

"Accepted, April 28, 1930. Payable Farmers & Merchant's Bank, Coquille, Ore. A. C. Ruby, Pres. West Coast Lumber Co. David D. Hall, Manager, A. C. Ruby."

Pursuant to an agreement, A. C. Ruby made an endorsement, contract and guaranty upon the back of each of said trade acceptances, which he signed, substantially as follows:

"I, We, or either of us, the endorsers named below, waive presentment, demand of payment and notice of non-payment and protest, and guarantee the payment of the within obligation, and consent to extension thereof without notice to us. And in the event suit or action is commenced to collect the same, we further agree to pay such additional sum as the court may adjudge reasonable as attorney fees in such suit or action. A. C. Ruby."

The other four trade acceptances were in substantially the same form, the dates, payees, due dates and amounts of each being as follows:

Dennis McCarthy, payee, April 28, 1930, due date, September 1, 1930, $7,302.68. "Accepted April 28, 1930, payable at Farmers' & Merchants Bank, Coquille, Oregon, A. C. Ruby, Pres. West Coast Lumber Co., David D. Hall, Manager, A. C. Ruby."

Dennis McCarthy, payee, June 3, 1930, due date Nov. 1, 1930, $6,724.41. "Accepted West Coast Lumber Co., Louis Charneski, Mgr., payable at Farmers & Merchants Bank, Coquille, Ore."

Dennis McCarthy, payee, May 1, 1930, due date Dec. 1, 1930, $10,725.66. "Accepted West Coast Lumber Co. Louis Charneski, Mgr., payable at Farmers & Merchants Bank, Coquille, Ore."

Richard McCarthy, payee, June 20, 1930, due date Aug. 20, 1930, $5,409.98. "Accepted West Coast Lbr. Co., Louis Charneski, Mgr., payable at Farmers & Merchants Bank, Coquille, Ore."

The defendants answered denying any misrepresentation or fraud and alleging, in effect, that the trade acceptances were valid obligations issued in payment for logs and endorsed and guaranteed by plaintiff A. C. Ruby, personally; that the logs were sold on the faith and credit of the plaintiff, and asked for judgment for the amount due on the several trade acceptances. The plaintiff demurred to the answers of defendants which are denominated cross-complaints, which demurrers were overruled. Plaintiff raises practically the same question as was raised by the demurrers, contending that the court had no jurisdiction to render a money judgment for the amount of the trade acceptances, after it found that the allegations as to misrepresentation and fraud were not sustained.

Plaintiff, by his complaint, challenged the validity of these trade acceptances, asked for cancellation thereof and prayed for an injunction enjoining their transfer, and that the same be surrendered and cancelled, and for other equitable relief. The trade acceptances were brought into the case by the complaint. The defendants answered denying the allegations in regard to misrepresentation and fraud, and, by their several answers, asserted that the trade acceptances were valid obligations against plaintiff, and also asked for equitable relief, that the plaintiff be enjoined from transferring his property so as to defeat the collection of the trade acceptances. It therefore appears that both parties asked for equitable relief.

■ We think it is the settled law that a court of equity, having jurisdiction of the subject-matter of a suit or having acquired jurisdiction over some portion of a controversy, will proceed to decide the whole issue and award complete relief, although the rights of the parties are strictly legal and the final remedy is of a kind that may be granted by a court of law: *Templeton v. Bockler*, 73 Or. 494, 509-510 (144 P. 405); *Crossen v. Campbell*, 102 Or. 666, 679 (202 P. 745); *Oregon Growers' Co-op. Ass'n v. Riddle*, 116 Or. 562, 569-570 (241 P. 1011); 1 Pomeroy's Eq. Juris. (3d Ed.) § 231; 10 R. C. L. 370-1, § 120. Where parties submit themselves to the jurisdiction of a court of equity such a court with its flexible procedure is capable of disposing of the case on its merits: *Bockler v. Wurfel*, 121 Or. 159, 165 (254 P. 353); see also *Hudson v. Goldberg*, 123 Or. 339, 343 (262 P. 223), where this question was quite fully treated by Mr. Justice RAND; *Kitcherside v. Myers*, 10 Or. 21; *Municipal Security Co. v. Baker County*, 33 Or. 338 (54 P. 174); *Closset v. Portland Amusement Co.*, 134 Or. 414, 425-427 (290 P. 556, 293 P. 720).

In *Everson v. Haun*, 106 Or. 612, 624-625 (213 P. 135), this court, speaking through Mr. Chief Justice McBRIDE, said:

"The arm of equity is long. It will not reach half way to do half equity when whole equity can just as easily be grasped. * * * Nobody has ever yet defined the limits of equity and nobody ever will. It takes a case as a whole and, having obtained jurisdiction in the first place, it proceeds to administer complete relief by whatever means that relief may be achieved, whether it be by requiring specific performance as a collateral matter, the payment of money, the execution of a deed, or any other matter."

■ After the validity of the trade acceptances was established there was no defense indicated by plaintiff's complaint or by the record. The only object for which plaintiff seeks to have the case tried as a law action is to try the identical question that has been already tried and adjudicated by a court of equity, namely, the validity and efficacy of the trade acceptances. This cannot be granted. It was appropriate for the court of equity to proceed to a full determination of the case and render judgment for the amount of the trade acceptances.

In *Topolos v. Skotheim*, 126 Or. 683, 693 (250 P. 235, 270 P. 753), Mr. Chief Justice McBride stated:

"It does not follow that the court in administering equity is precluded under proper circumstances from rendering a money judgment. Nor does it follow in every case that a court will refuse relief because there seems to be no other way of reparation except by rendering a money judgment, and this is especially the case since the passage of Section 390, Or. L. * * *" (now section 6-102, Oregon Code 1930).

■ We concur in the findings of the circuit court that there was no fraud or misrepresentation made by defendants, relating to the trade acceptances, and that such trade acceptances were valid obligations on the part of plaintiff A. C. Ruby. Ruby's own testimony plainly shows that he is liable upon the trade acceptances as a guarantor and that he executed the guaranties pursuant to an agreement made prior to the delivery of the logs and prior to the acceptances of the trade acceptances to guarantee the same. He was the president and general manager of the corporation and the subscriber of $100,000 of its capital stock. He and Finley had purchased the plant from a bankrupt corporation. They commenced placing orders for the

logs pursuant to a plan to convey the property to a corporation they intended to form and which was afterwards formed, namely, the West Coast Lumber Company.

The two defendants McCarthys agreed to sell logs to the West Coast Lumber Company at the special instance and request of the defendant, the West Coast Lumber Company, and of plaintiff A. C. Ruby, as an officer, director and stockholder of the corporation, and the McCarthys sold and delivered to the West Coast Lumber Company specified quantities of saw logs at certain prices, and at the time of the bargain and sale it was agreed between each of the McCarthys and the defendant corporation and the plaintiff that the McCarthys would sell and deliver such logs to the defendant corporation and extend the time of payment for the logs provided that defendant corporation would accept the trade acceptances and that Ruby would endorse the same and guarantee the payment thereof. Based upon such promises by the defendant corporation and plaintiff Ruby, the logs were delivered to the defendant corporation.

The testimony shows that the specified quantities represented by the trade acceptances were placed in the local boom of the defendant corporation and were scaled and the agreed price thereupon became due, in the absence of the trade acceptances, and the guarantee thereof on the 10th of the succeeding month. The record shows that in March, 1930, Dennis McCarthy sold and delivered to the defendant corporation 663,880 feet of saw logs at the agreed price of $11 per thousand and the trade acceptance dated April 28, 1930, in the sum of $7,302.68 was made and payment for the logs extended to July 20, 1930, and the trade acceptance was

accepted by the defendant corporation on the same date and sent to Mr. Ruby at Portland and endorsed and guaranteed by him. A similar quantity of logs and a second trade acceptance of like import was also executed and endorsed and guaranteed. A similar trade acceptance for 611,310 feet of logs delivered in May and a trade acceptance dated June 3, 1930, in the sum of $6,724.41 was made payable November 1, 1930. Another similar trade acceptance for 975,060 feet of logs sold in April, 1930, as represented by a trade acceptance for $10,725.66 was dated May 1, 1930, payable December 1, 1930. Still another similar trade acceptance was given to Richard McCarthy for 291,816 feet of saw logs at $9.50 per thousand, which were sold and delivered in May, 1930, and evidenced by a trade acceptance dated June 20, 1930, in the sum of $5,409.98, payable August 20, 1930. Each of the trade acceptances was endorsed and guaranteed by plaintiff Ruby, as shown by the testimony. The testimony conclusively shows that the trade acceptances in the log deals were not consummated until after the acceptances were endorsed and guaranteed by plaintiff Ruby, pursuant to the former agreement.

■ It plainly appears from the evidence that the McCarthys would not have sold the logs to the West Coast Lumber Company except for the promise of Ruby to endorse and guarantee the acceptances of the lumber company. The contract of Ruby was one of endorsement with enlarged liability: *Cady v. Bay City Land Co.*, 102 Or. 5 (201 P. 179, 21 A. L. R. 1367). The agreement of plaintiff Ruby is an original one to pay as distinguished from a conditional or secondary obligation. Ruby is liable in this action as he signed an absolute undertaking to pay the debt when due.

In 1 Brandt on Suretyship and Guaranty, (3d Ed.) § 23, p. 64, the writer states:

"Where a promise that a surety or guarantor will become liable is part of the inducement on which the creditor acts in creating the original debt, this is sufficient consideration to support the contract of the surety or guarantor who subsequently signs. A told B that if C would lend B money, he, A, would be surety for it. B communicated this to C and on the strength of it, C loaned B money and took his note for it, due in one year. Three days after the note became due A signed it, and he was held bound."

■ The endorsement and guaranty of Ruby was pursuant to a prior agreement therefor, as heretofore stated. Independent of the provisions of the negotiable instruments law forbearance or extension of time, where there is a prior supporting contract, is an adequate consideration: *First National Bank v. Cecil,* 23 Or. 58 (31 P. 61, 32 P. 393); *Davies v. Rea,* 77 Or. 648 (152 P. 267).

The fact that some of the trade acceptances were sent to Portland for the endorsement and guaranty of Mr. Ruby, after the acceptances had been accepted by the lumber company, does not indicate, according to the testimony, that the transaction was completed until the endorsement and guaranty of Ruby was obtained.

■■ When the guaranty is contemporaneous with the original contract, as it was in this case, it is not necessary that the consideration should be distinct from that upon which the instruments were executed. The inducement which moved the defendants to make the sale of the logs was the additional strength which the contracts of guaranty by Ruby imparted to the trade acceptances. The credit was not alone given to the lumber company. Indeed, it appears that very little

credit was given to the corporation, but the sellers of the logs relied upon the guaranty of Mr. Ruby particularly. Such endorsements and guaranties were made prior to the final delivery of the trade acceptances. In such cases it will be presumed to be upon consideration of the credit: *First Nat. Bank v. Hawkins*, 73 Or. 186, 189 (144 P. 131.)

██ Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value: § 57-201, Oregon Code 1930. Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time: § 57-202, Oregon Code 1930; *Matlock v. Scheuerman*, 51 Or. 49 (93 P. 823, 17 L. R. A. (N. S.) 747). An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser without receiving value therefor, and for the purpose of lending his name to some other person: § 57-206, Oregon Code 1930. When a person writes his name on the back of a note or negotiable instrument at the time it is issued, for the purpose of procuring credit for the maker, or if the person so signing received a part of the consideration, he is regarded as an original promisor: *Lumbermen's Nat. Bank v. Campbell*, 61 Or. 123 (121 P. 427); *First Nat. Bank v. Bach*, 98 Or. 332 (193 P. 1041); *Davis v. Wells Fargo & Co.*, 104 U. S. 159 (26 L. Ed., 686), *Lawrence v. McCalmont*, 2 How. 426 (11 L. Ed. 326); 28 C. J. Note 68, page 920.

In *Faust v. Rodelheim*, 77 N. J. Law 740 (73 Atl. 491, 27 L. R. A. (N. S.) 189-192), we find the following:

"In Child's Suretyship & Guaranty, p. 52, it is said: 'If, during the original negotiations between the

principal and creditor before the contract was complete, the creditor had stipulated that the maker should procure a surety when asked to do so, there would have been a consideration for the contract of the surety whenever he might sign, as in such case the creditor suffered the disadvantage of parting with his money in reliance upon the surety to be obtained, and would not have parted with his money had it not been for the contract of suretyship yet to be made.' "

In the notes to this case, we find the following:

"And in McNaught v. McClaughry, [42 N. Y. 22, 1 Am. Rep. 487] supra, at the time of the making and delivering of a note, the maker promised and agreed with the payee that he would procure his father to sign the note as surety if at any time he should desire it, and the note was accepted upon this agreement; in a few months the payee desired the additional security, and the maker procured his father to sign the note and then redelivered it to the payee. The court, after stating the general rule as to a contract without consideration, said: 'On the other hand, if Abram (the maker) had originally agreed with the lender that he would obtain the new indorser, and had obtained the money in the faith of that promise, then his finding the additional indorser was based upon a valid consideration, and the indorser was held by his signature.'

"And following the McNaught Case it was held in Harrington v. Brown, [77 N. Y. 72] supra, that it is enough that the surety signs the note at the request of the person who has given the assurance that he would so sign it."

The answers of the defendant do not set forth counterclaims as contended by plaintiff. The trade acceptances, as heretofore stated, were the subject-matter of the complaint and the answers state defenses and not counterclaims. It is therefore unnecessary to discuss the question pertaining to counterclaims in suits in equity.

The record plainly shows that the trade acceptances involved in this suit are valid and binding obligations against the plaintiff. It was appropriate for the court to render judgment thereon, and to terminate the case as to each of the trade acceptances.

The decree of the circuit court is affirmed.

BROWN, BELT and CAMPBELL, JJ., concur.