Argued and submitted May 22, affirmed in part;
reversed in part; and remanded September 8,
reconsideration denied October 20,
petition for review denied November 24, 1981 (292 Or 109)

ELLISON et al,
*Respondents,*

*v.*

WATSON et al,
*Appellants,*
KETJEN et al,
*Respondents.*

(No. 74-570-E, CA 19086)

633 P2d 840

Donald H. Coulter, Grants Pass, argued the cause for appellants. With him on the briefs was Myrick, Coulter, Seagraves & Myrick, Grants Pass.

Walter L. Cauble, Grants Pass, argued the cause for respondents Ellison. With him on the brief were Schultz, Salisbury & Cauble, Grants Pass.

No appearance for respondents Ketjen and Smith.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The trial court decreed reformation of two land sale contracts on the ground of mutual mistake, and the defendants Watson appeal.[1] We review *de novo,* ORS 19.125(3), and affirm in part, reverse in part, and remand for entry of a new decree.

Plaintiffs Ellison owned an eighty acre tract of land in Josephine County.[2] In 1963 the Ellisons sold one-half of the tract to the Ebbens, reserving a fifty foot strip along the south line of the tract to assure access to their retained forty acres from Pleasant Valley Road. The contract contained a legal description of the property being conveyed to the Ebbens; however, no survey was performed. The parties assumed that an old fence, which divided the Ellison property from that of a neighbor named Hoylman, marked the south line of the Ellison property. After the contract was signed, Mr. Ellison and Mr. Ebben marked off fifty feet north of the old fence as the strip reserved by the Ellisons for access to their property. The Ellisons constructed a road on the fifty foot strip,[3] and Mr. Ebben built a fence on the north side of that road to mark the southern boundary of his property.

After Mr. Ebben's death in 1970, his widow sold approximately 23 acres of the Ebben property to the defendants Watson. This parcel extended to the south boundary of the Ebben property, which everyone assumed was up to the Ebben's fence and the Ellison's reserved fifty foot strip. The Watsons were informed that the roadway belonged to the Ellisons and was not included in the sale. Again, there was no survey, and the parties assumed that Ebben's south fence corresponded with the legal description in the contract. The Watsons made no claim to the reserved

---

[1] Defendants-respondents Ketjen and Smith, co-personal representatives of the estate of Eveline Ebben, deceased, do not appeal from the decree and made no appearance in this court.

[2] See attached map.

[3] In 1964, the Ellisons entered into a five-year lease with Josephine County giving the county access to a gravel site on the Ellisons' retained property. The lease permitted the county to use the contract-reserved fifty foot strip as a roadway to the gravel site.

roadway and began repairing the fence which Mr. Ebben had built.

When the Watsons had their property surveyed in 1972, it was discovered that the south fence built by Mr. Ebben did not mark the south boundary of the property as legally described in the Ellison-Ebben and the Ebben-Watson land sale contracts and that the true boundary was substantially south of that fence. The Watsons thereupon moved their boundary south to the line indicated by the survey. This excluded the Ellisons from the use of the reserved fifty foot strip and roadway. The Ellisons sought reformation on the ground of mutual mistake. The court issued a decree reforming both contracts to make the south fence built by Mr. Ebben the southern boundary of the Watson tract.[4]

The defendants Watson contend the trial court erred in entering a decree of reformation: (1) where there was no proof of an antecedent agreement to which the writing could be reformed; (2) where there was no proof that the claimed mutual mistake as to the boundary line involved a material fact and where the proof showed that the parties assumed the risk of any mistake in the location of the boundary; (3) where, by the terms of the contract, risks as to mistakes on the boundary lines were rendered nonactionable; (4) where the proof was not clear, convincing and unambiguous; and (5) when the plaintiffs were not a party to the Ebben-Watson contract.

First, we consider whether plaintiffs are precluded from suing for reformation. Defendants contend that even if there was clear and convincing evidence of the necessary elements for reformation of the contracts, there was no basis for reformation because by the terms of the Ellison-Ebben contract mistakes of boundary location were rendered nonactionable. The contract provides:

"No representation as to quality, quantity, acreage or any other fact relating to said property shall be deemed a

---

[4] Paragraph 3 of the decree provides: "That defendants Watson are hereby required to remove any and all barriers from the roadway, * * *" claimed by the Ellisons. The defendants did not appeal this portion of the decree; therefore we need decide at this time whether the injunction was appropriate in the absence of any underlying claim against the Watsons.

material representation between the parties hereto unless the same shall be included in this contract in writing, and all other representations of whatsoever nature are hereby agreed to be immaterial and not actionable by or in favor of either party, and Vendees accept said premises on the basis of their own independent investigation and inspection and not upon any representations made by the Vendors."

Defendants rely on *Wilkinson v. Carpenter,* 276 Or 311, 554 P2d 512 (1976), where the Supreme Court held that such a disclaimer would preclude rescission of a contract because of misrepresentations, unless the party seeking rescission had shown fraudulent representations. Defendants also cite *Bodenhamer v. Patterson,* 278 Or 367, 563 P2d 1212 (1977), in which rescission was allowed, based upon fraudulent misrepresentations. There, the Supreme Court held that the disclaimer clause would have precluded rescission if the misrepresentations had been innocent. Plaintiffs contend that *Wilkinson* and *Bodenhamer* do not apply here, because this is a suit for reformation, not rescission, and they are not alleging misrepresentations as to the boundary line, but rather that all the parties believed that the Ebben fence marked the southern boundary and that they all were mistaken.

■    A misrepresentation is an assertion made by one party to another which is not in accord with the facts. 2 Restatement of Contracts § 470 (1932). A mistake is a state of mind which is not in accord with the facts. 2 Restatement of Contracts § 500 (1932). The purpose of a disclaimer clause is to protect the parties (usually the seller) where innocent misrepresentations have been made. However, where there is mutual mistake, reformation should be available to conform a contract to the agreement actually entered into by the parties. As the trial court noted:

"* * * To place these disclaimer clauses in contracts with the expected effect of 'freezing' the rights of the parties thereby would seem improper. Certainly it would take little imagination to set forth a variety of situations where horrendous inequities would result if such an unbending rule of law were followed."

When parties to a contract seek reformation based on mutual mistake, they are in effect contending that the

contract does not reflect the agreement which they entered into. It is not logical to bind the parties by a disclaimer clause to the terms of an instrument which is inconsistent with their agreement.

■     Next, we consider whether plaintiffs proved the elements necessary for reformation of the contracts. Plaintiffs must show by clear and convincing evidence an antecedent agreement between the parties and a mutual mistake of material fact. *Frich v. Hoag,* 277 Or 135, 559 P2d 879 (1977); *Mayer/Kleinknecht v. Bassett,* 263 Or 334, 501 P2d 782 (1972). Defendants argue that it was impossible to have an antecedent agreement on the boundary, because the Ellisons and the Ebbens did not meet before the contract was signed. They also claim that there was no evidence that plaintiffs' agent discussed the boundary with the Ebbens.

■     We find that the plaintiffs and the Ebbens shared a common understanding that the south fence corresponded with the legal description of the property line. It is not necessary that the plaintiffs and the Ebbens to have met before the signing of the contract for them to have shared an understanding of the property being conveyed. Mr. Ellison testified he had always believed that the old south fence marked the southern boundary of his land. Mrs. Ebben testified that she and her husband understood that the fence was the southern boundary and they never realized they had any claim to any property south of the Ebben fence. We are satisfied that both parties signed the contract believing that the legal description corresponded with the fence line.

■     The parties' conduct after entering into the contract supports a finding that both the Ellisons and the Ebbens intended the fence to mark the boundary. The marking off of the Ellison roadway by Mr. Ellison and Mr. Ebben and the construction of the fence on the north side of that roadway by Mr. Ebben without any dispute over where the property line was shows that they understood the fence was the boundary. The trial court properly considered the conduct of the parties after the signing of the contract in determining what they intended and understood the contract to mean. *Webb v. Culver,* 265 Or 467, 509 P2d 1173

(1973). The record supports the trial court's finding that the plaintiffs had proven that the parties had a common understanding, an antecedent agreement that the fence line corresponded to the legal description of the property line.

■       Next, the defendants contend plaintiffs did not prove that any mutual mistake was material and that the evidence showed the parties assumed the risk of any mistake in the boundary. Defendants' argument is without merit. In any contract involving real property the boundaries of that property are a material fact. Boundaries mark the perimeter of the property which is the subject of the contract. Furthermore, in this case, the parties had to ascertain the location of the south boundary in order to define plaintiffs' retained roadway.

■       Defendants maintain that by not having a survey, the Ellisons and the Ebbens assumed the risk that the existing fence line was not the correct boundary. This might be reasonable if there were no reasonable basis for the parties' acceptance of the old fence as the true boundary. However, the evidence shows the fence was over half a century old and had stood as the boundary of the property for many years, if not since its construction. The parties did not choose a line at random and agree to treat it as the boundary; if they had, defendants' claim that they had assumed the risk of its being wrong might have merit. We conclude that the parties reasonably assumed that the fence which had marked the boundary for years marked the correct boundary. Plaintiffs proved an antecedent agreement and mutual mistake as to a material fact. They are therefore entitled to reformation of the Ellison-Ebben contract.

The final question is whether the trial court erred in reforming the Ebben-Watson contract. The plaintiffs Ellisons' first complaint sought reformation of both the Ellison-Ebben and Ebben-Watson land sale contracts. The defendants Watson successfully argued in the trial court that the Ellisons had no standing to seek reformation of the Ebben-Watson contract to which they were not parties. The Ellisons thereupon filed an amended complaint in which they prayed for: (1) reformation of the Ellison-Ebben

contract only; (2) a mandatory injunction requiring the defendant Watsons to remove all barriers from the fifty-foot reserved strip; and (3) general equitable relief. The Ellison's attorney thereafter advised the court and defense counsel that he "would not in any way allege that the (Ebben-Watson) contract should be reformed." The defendant Ebben estate, by way of answer to the Ellisons' complaint, joined in the relief sought by the Ellisons; however, they did not request reformation of the Ebben-Watson contract.

■    At the trial plaintiffs established that the defendants Watson had notice of the understanding as to what constituted the boundary in the Ellison-Ebben contract and that the roadway belonged to plaintiffs.[5] Plaintiffs also showed that defendants Watson's parcel of land as marked by the fence north of the roadway consisted of 22.63 acres and that the Watsons had contracted for a parcel consisting of approximately 23.12 acres, which they understood to mean two acres more or less than 23.12. After the suit was tried, no party asked to amend the pleadings to conform to the proof. The trial judge directed that a decree should be entered "granting the relief prayed for by plaintiff." The decree prepared by plaintiffs' attorney and signed by the trial judge, however, reformed not only the Ellison-Ebben contract, but the Ebben-Watson contract as well.

■ ■  Oregon has long recognized the broad power of a court of equity to shape a decree under a prayer for general equitable relief according to the equities of the case.[6] However, here, the relief granted is not only outside the scope of the pleadings, but involves a matter *specifically excluded* from the case by the plaintiff with the knowledge and consent of the defendants and the court. We conclude it was

[5] A purchaser with notice of a prior right takes subject to that right. *Borton v. Medicine Rock Land Co.,* 275 Or 59, 65, 549 P2d 1122 (1976); *Collins v. Heckart et al.,* 127 Or 34, 43, 270 P 907 (1928); *Belt et ux. v. Matson et al.,* 120 Or 313, 320, 252 P 80 (1927).

[6] *Schreiber v. Karpow,* 290 Or 817, 626 P2d 891 (1981); *Stan Wiley v. Berg,* 282 Or 9, 21, 578 P2d 384 (1978); *Rose v. Rose and Freeman,* 279 Or 27, 566 P2d 180 (1977); *Wittick v. Miles,* 274 Or 1, 545 P2d 121 (1976); *Federici v. Lehman,* 230 Or 70, 368 P2d 611 (1962); *Brooke et ux v. Amuchastegui et ux,* 226 Or 335, 360 P2d 275 (1961); *Jensen v. Probert,* 174 Or 143, 148 P2d 248 (1944); and *Katz v. Obenchain,* 48 Or 352, 85 P 617 (1906).

error for the trial court to decree a reformation of the Ebben-Watson contract, and that that portion of the decree is invalid. *See Shumate v. Robinson,* 52 Or App 199, 627 P2d 1295 (1981).

The decree is affirmed in all respects except that paragraph 2 thereof (ordering reformation of the Ebben-Watson contract) is ordered stricken from the decree.

Affirmed in part; reversed in part; and remanded for entry of a new decree.[7]

---

[7] The record indicates that all of the documents in the case, including both deeds, are being held by a bank as escrow pending full payment of both contracts and that each of the contracts is still executory. It also appears that none of the documents have been recorded.