Argued and submitted April 27, affirmed in part; reversed
in part; and remanded for further proceedings December 14, 1981

# OSHATZ,
*Appellant,*
*v.*
# GOLTZ et al,
*Respondents.*

(No. A7902-00642, CA 18044)

637 P2d 628

Gary M. Bullock, Portland, argued the cause and filed the brief for appellant.

Gary I. Grenley, Portland, argued the cause for respondent. With him on the brief was Grenley, Rotenberg & Laskowski, Portland.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

Buttler, P. J., concurring in part; dissenting in part.

## WARDEN, J.

Plaintiff brought a suit in equity, seeking dissolution of an alleged oral partnership between himself and defendant Dennis Goltz (defendant),[1] an accounting, appointment of a receiver, equal division of profits and losses and general equitable relief. He appeals from the trial court's findings that there was no partnership and that he was not entitled to recover the reasonable value of his architectural services because he failed to plead the issue.

Plaintiff is an architect, and defendant is a veterinarian. In 1972, plaintiff provided architectural services for defendant in the construction of a veterinary hospital. In May, 1977, they associated in the acquisition of certain real property and the construction of a commercial building. No written agreement setting out their business relationship was executed, however, and the parties disagree as to the character of that relationship. Plaintiff contends that from the beginning they agreed to be partners. He testified that the agreement was not put in writing, initially because he did not want developers and other clients for his architectural services to know that he was involved in the ownership of a development project and, later, because defendant insisted upon settling unrelated legal matters in which he was involved before having their agreement put in writing. Defendant, on the other hand, contends that the parties never agreed upon what form their business association would take or upon its terms. He concedes that formation of a partnership was under consideration from the outset, but it was never formalized, orally or in writing, because there were too many areas of disagreement, including the relative values of the services each was to contribute to the partnership.

■ Although we review *de novo*, ORS 19.125(3), we give particular weight to those trial court findings which turn on a witness' credibility. *State ex rel Juv. Dept. v. Maves*, 33 Or App 411, 416, 576 P2d 826 (1978).

---

[1] Plaintiff later asked to amend his complaint to name Irene Goltz as a party defendant on his belief that she was a co-purchaser with defendant Dennis Goltz of the real property involved in the partnership dispute.

■ "A partnership is an association of two or more persons to carry on as *coowners* of a business for profit." (Emphasis added.) ORS 68.110(1). A mere community of interest, such as the right to share in profits as compensation for services rendered, does not make one a partner; the right to share in profits must result from part ownership of the business. *Hayes v. Killinger,* 235 Or 465, 385 P2d 747 (1963). The plaintiff must prove, among other things, that the parties mutually intended to enter into such a relationship. *Burnett v. Lemon,* 185 Or 54, 199 P2d 910 (1948). Where the alleged agreement was oral, the court must look primarily to the parties' conduct and course of dealing to determine whether a partnership was formed. *Hayes v. Killinger, supra.* Self-serving declarations of a party are not sufficient. *Burnett v. Lemon, supra.*

■ Factors that weigh against the existence of a partnership here include:

(1) Plaintiff made a number of appearances before the Beaverton Board of Design Review in behalf of the project in which he identified himself only as the architect, while identifying defendant as the owner.

(2) Defendant alone was a party to the agreement with the general contractor for the construction of the building.

(3) Defendant alone negotiated and signed the lease with Chicago Title Insurance Company, which was to be a tenant in the completed building. He alone negotiated and signed the construction contract for leasehold improvements and paid 47 percent of the cost of the improvement's construction. Plaintiff never indicated to Chicago Title that he had a financial or partnership interest in the building. When changes had to be made during construction, plaintiff said that he had to contact the owner of the building.

(4) Defendants were sole applicants for and obligors on the building construction loan, and all bank documents indicate that they were sole owners of the building.

(5) A certified public accountant, with whom the parties met on May 27, 1977, to discuss this venture and

the nature of their business relationship, testified that the parties could not agree on the terms of the potential partnership and that plaintiff indicated an inability or unwillingness to make an equal financial contribution or to sign the loan obligation.

(6)  A lawyer with whom the parties met, on July 26, 1977, to discuss their business relationship testified that agreement had not been reached on the terms of a partnership at that time and that the discussion was exploratory.

(7)  Plaintiff paid nothing towards the option on the real property or on the property itself; he paid no part of the financing fee; he made no payments on the construction loan; he paid no part of the building permit fee; and he paid none of the $17,000 leasing commission.

(8)  Although plaintiff testified that, in the course of arriving at a property settlement agreement in a suit to dissolve their marriage, he informed his then wife of his partnership interest, she testified that she was not so informed. He also testified that he informed the attorney representing him in the dissolution suit that "he had a business partnership with Dennis Goltz." The attorney, referring to his notes, testified that he was told only that there was a potential joint venture, which plaintiff had not yet bought into.

These are the facts that suggest a partnership:

(1)  Plaintiff performed extensive architectural services without any payment from defendant and bore the risk of losing his fee.

(2)  Plaintiff paid out $5,305.56 in direct costs on the project.

(3)  Plaintiff performed other services beyond what an architect would ordinarily do, including negotiating and paying for a required easement, soliciting neighbors' consents to a variance and appearing before the city council and obtaining the needed variance.

We agree with the trial court that the weight of the evidence as to the parties' conduct is against plaintiff. Apart from the facts recited above, plaintiff's evidence

consists primarily of his own testimony as to what he and defendant agreed upon, and that is not enough to prove the existence of a partnership. *Burnett v. Lemon, supra.* Moreover, to whatever extent we may properly consider the parties' own assertions, such testimony also weighs in defendant's favor, first, because defendant testified that there was no partnership (and we defer to the trial court on questions of witness credibility); and, second, because the *substance* of plaintiff's testimony, which we have examined for ourselves, diminishes his credibility as well. His explanation for not putting the alleged agreement in writing at the outset is not satisfactory: a written agreement no more needs be made public than an oral one. Although plaintiff's desire to conceal his interest in the building may explain his public statements in which he identified defendant as the owner and himself as merely the architect, we think those statements must be held against him, either as to his credibility or on the partnership issue itself.

In sum, we agree with the trial court that plaintiff failed to carry his burden of proof that both parties intended to form a partnership and that they were co-owners of the property.

Although finding against plaintiff on his partnership theory, the trial court, nevertheless, initially found that he was entitled to $27,705.50 as compensation for his architectural services and for unpaid costs. Defendant objected on the grounds that that award went beyond the issues framed by the pleadings and that the trial court lacked jurisdiction to award such compensation. The trial court recognized that defendant had been disadvantaged by a lack of opportunity to present his own evidence on what would be reasonable compensation[2] and for that reason amended its findings and conclusions to delete the award.

■      It is well established that,

"* * * a 'court of equity, having jurisdiction of the subject matter of a suit * * * will proceed to decide the whole issue and award complete relief, although the rights of the

---

[2] At trial, plaintiff's evidence on the value of his architectural services was admitted over defendant's objection and only because the trial court found it relevant to other issues. Accordingly, defendant did not offer any evidence of his own on the subject.

parties are strictly legal and the final remedy is of a kind that may be granted by a court of law. * * *' *Ruby v. West Coast Lumber Co.,* 139 Or 388, 393, 10 P2d 358 [1932]." *Emrich v. Emery,* 216 Or 88, 95, 332 P2d 1045 (1958), 335 P2d 604, 337 P2d 972 (1959).

It is also well established, however, that the relief which a court of equity may grant must be confined to issues fairly raised by the pleadings. *Caughanour v. Hutchinson,* 41 Or 419, 424, 69 P 68 (1902); *Hurlbutt v. Hurlbutt,* 36 Or App 721, 585 P2d 724 (1978), *rev den* 285 Or 73 (1979); *but compare, Ellison v. Watson,* 53 Or App 923, 633 P2d 840 (1981), with *Shumate v. Robinson,* 52 Or App 199, 627 P2d 1295 (1981).

■ The question here is whether the pleadings fairly raised the issue of recovery of reasonable value for plaintiff's services. We think they did. The complaint alleged that plaintiff contributed cash and architectural services towards the construction of the building which defendant owns. It included a prayer for an accounting and for general equitable relief. Defendant's answer admitted that plaintiff rendered architectural and general contracting services to defendant.

In *Emrich,* the plaintiff brought a suit to foreclose a mortgage on certain property, and the defendants filed a cross-complaint seeking to transform a deed into a mortgage, an accounting, and general equitable relief with respect to a building which the defendants had helped to construct on other property. The court declined to transform the deed, but, nevertheless, remanded the case for determination of defendants' reasonable compensation for the labor and material which they had contributed towards the construction of the building, for the reason quoted from *Ruby v. West Coast Lumber Co., supra.*

In *Stan Wiley v. Berg,* 282 Or 9, 578 P2d 384 (1978), the plaintiffs sought a declaration of their rights under option provisions of agreements by which they purchased their condominium units and an injunction to prevent the defendants' enforcement of an amended lease agreement purporting to establish a minimum price for exercise of their option. The Supreme Court set out the terms of a decree giving plaintiffs

a choice of two options and extending the time for notice of the first exercise of the option. In fashioning this result, the court said, "[i]t is elementary that in a suit in equity, and under a complaint and prayer for general relief, as in this case, a court of equity will determine with which party the equities are and may then shape a decree according to the equities of the case." 282 Or at 21.

In *Wells v. Wells,* 252 Or 400, 449 P2d 434 (1969), the plaintiff brought suit to specifically enforce an alleged contract to make a will by which he would be devised certain property. A demurrer to the complaint was sustained and the suit was dismissed. The plaintiff appealed. After filing the appeal, he died. The defendants moved to dismiss the appeal, arguing that because the plaintiff could not specifically perform his promise, he was not entitled to a decree of specific performance, there being no mutuality of obligation. In remanding the case to the trial court, the Supreme Court said: "* * * [E]ven assuming that specific performance is not available, the evidence may establish that [plaintiff's] estate is entitled to the reasonable value of his services." 252 Or at 406. In a footnote to that language, the Supreme Court cited *Ruby v. West Coast Lumber Co., supra.*

Here, there is absolutely no dispute that plaintiff performed extensive architectural services for defendant, or that he paid certain direct costs himself; nor is there any question, once the partnership issue is decided against him, that he is entitled to reasonable compensation for those services; the only question is what the amount of compensation should be. Thus, we think that it is clear under *Emrich, Stan Wiley* and *Wells,* that the trial court had jurisdiction to award plaintiff reasonable compensation and that the pleadings sufficiently raised the issue. We agree with the trial court that defendant was disadvantaged on this issue. We reverse and remand for additional evidence of the reasonable value of plaintiff's services.

Affirmed in part; reversed in part; and remanded for further proceedings.

**BUTTLER, P. J.,** concurring in part; dissenting in part.

I concur in that part of the majority opinion which concludes that plaintiff did not sustain his burden of proof that he and defendant Dennis Goltz had formed a partnership with respect to the property in question. However, I do not agree that, on the basis of the pleadings and record in this case, we should remand the case for what amounts to a new and different trial on two causes of action neither pleaded nor orally asserted by plaintiff below until after the trial court had rendered its decision with respect to the partnership claim.

Plaintiff's complaint alleged that he and defendant entered into a partnership whereby they agreed to purchase and improve certain real property and that plaintiff's contribution to the partnership was to be in the form of cash and services as an architect in the design of the building, which was virtually completed when the complaint was filed. He prayed for a decree appointing a receiver, dissolving the partnership, ordering an accounting between the parties and for equal division of the profits after payment of all liens and charges; included in the prayer was the usual phrase "and for such other further relief as may be justified in the premises and for his costs and disbursements."

In his answer, defendant denied the existence of any partnership and, as a first affirmative defense, alleged that defendant hired plaintiff to design and supervise construction of a commercial building located on the real property in question and that whatever services plaintiff rendered were not related to any partnership agreement. Defendant also asserted a counterclaim seeking damages for negligence of the plaintiff in performing the architectural services. Plaintiff generally denied all of the allegations in defendants' affirmative defenses and counterclaim.

Approximately ten days before the case was originally scheduled for trial, plaintiff took the deposition of an adverse witness. There was a discussion on the record between counsel for the parties as to what issues were to be tried and, therefore, inquired into during the deposition. Plaintiff's counsel indicated that he thought there was the partnership issue and the issue of the value of plaintiff's

services, if the first issue was resolved against plaintiff. Defendants' counsel said the only issue pleaded was that relating to the partnership, to which plaintiff's counsel replied that he thought plaintiff had amended his complaint to cover the alternative theory. Defendants' counsel pointed out that no such amendment had been made and that he thought it was too late to do so at that time. Plaintiff's counsel then stated: "Okay. Then we will try the issue strictly of the partnership."

Shortly thereafter, defendants voluntarily dismissed their counterclaim for negligent performance of architectural services, and the case went to trial solely on the question of whether or not there was a partnership between the parties. Plaintiff's closing argument to the court was limited solely to the partnership issue, and it was not until after the trial court submitted to counsel its proposed general findings and conclusions, in which the court found that plaintiff had not established the existence of a partnership but concluded *sua sponte* that plaintiff was entitled to be compensated $27,705.50 for services rendered and costs incurred, that the question arose.

Defendants filed objections to the proposed findings and conclusions on the ground that the issues relating to the value of plaintiff's services or costs incurred by him were not raised in the pleadings or tried as issues during the course of the trial. Plaintiff then filed a "Motion to Allow Additional Evidence." The trial court denied the motion, sustained defendants' objections to the original proposed findings and conclusions, filed amended general findings and conclusions to the effect that plaintiff had not established by the required quantum of evidence that he was entitled to any of the relief prayed for, and entered a judgment order accordingly.

In this court, plaintiff asks us to reverse the amended findings and conclusions, to affirm that portion of the original findings and conclusions granting plaintiff the sum of $27,705.50 as reasonable compensation for his architectural services and as reimbursement of unpaid costs "with a remand of the case to trial court to take additional testimony to find the reasonable value of plaintiff's architectural services."

The majority recognizes the well-established rule that, even though relief which a court of equity may grant may be broad, it is confined to issues raised by the pleadings. *Coughanour v. Hutchinson,* 41 Or 419, 69 P 68 (1902). However, it apparently concludes that a prayer for general equitable relief and for recovery of costs and disbursements is sufficient to support either a claim in *quantum meruit* or implied contract and also for money had and received. That, however, is not the law as I understand it. Even in lien foreclosure cases, where the plaintiff's claim is clearly for money (to be collected by foreclosure of the lien), if the lien is determined to be invalid for any reason, the plaintiff may proceed by way of *quantum meruit* or implied contract only if the complaint, in addition to asserting the lien claim, states a cause of action for labor performed or materials supplied. *Ward v. Town Tavern et al,* 191 Or 1, 35, 228 P2d 216 (1951). The rule set forth in *Ward* has been the law for some time, and the sense of it is incorporated in ORS 87.060(2) and (3).[1] *See B & D Investment v. Petticord,* 48 Or App 345, 617 P2d 276, *rev den* 290 Or 302 (1980); *Betz Construction v. Peterson,* 47 Or App 333, 337, 614 P2d 1184, *rev den* 289 Or 677 (1980).

The majority relies on language quoted from *Emrich v. Emery et al,* 216 Or 88, 95, 332 P2d 1045 (1958), 335 P2d 604, 337 P2d 972 (1959). The facts and issues in *Emrich* are lengthy and complex. For our purposes, it is enough to say that the plaintiff was seeking foreclosure of real and chattel mortgages, together with a deficiency judgment against defendant Emery and Emrich Furniture Co. Defendant Emery

---

[1] ORS 87.060(2) and (3) provide:

"(2) In suits to enforce the liens created by ORS 87.010, the court shall allow or disallow the lien. If the lien is allowed, the court shall proceed with the foreclosure of the lien and resolve all other pleaded issues. If the lien is disallowed, and a party has made a demand for a jury trial as provided for in subsection (3) of this section, the court shall empanel a jury to decide any issues triable of right by a jury. All other issues in the suit shall be tried by the court.

"(3) A party may demand a trial by jury of any issue triable of right by a jury after the lien is disallowed, if that party serves a demand therefor in writing upon the other parties at any time prior to commencement of the trial to foreclose the lien. The demand shall be filed with the court. The failure of a party to serve a demand as required by this rule shall constitute a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties."

made numerous contentions, among which was that he was entitled to offsets against plaintiff's claims by virtue of costs he had incurred in improving the Emrich Furniture Co. property. Although the opinion does not set forth what the pleadings alleged, the original opinion in *Emery* stated:

> "* * * The defendants' answer, in addition to the obligations previously mentioned, contains averments seeking to require plaintiff and company to account for amounts defendants allege are due to them. This, together with a prayer for general relief, is sufficient to enable the court to make this determination. * * *" 216 Or at 95.

The original opinion was followed by two opinions on petitions for rehearing. On the second petition, plaintiff contended that the offsets which the court had originally allowed defendants Emery against the Emrich Furniture Co. should not be allowed as an offset against the indebtedness due the plaintiff. The court stated in response:

> "* * * As indicated in our original opinion, the transactions and accounts of these three parties were so hopelessly interwoven that it was impossible to disentangle the web they had woven for themselves. A further review of the pleadings and evidence confirms our original belief that there is little to distinguish between the plaintiff Emrich as an individual and the defendant Emrich Furniture Co., his alter ego, as a separate entity. For this reason it was our belief, and still is, that the indebtedness due defendants Emery from the Emrich Furniture Co. should be applied on the amounts found due from these defendants to the plaintiff." 216 Or at 103-04.

As I understand the various opinions in *Emrich,* defendant Emery had asserted in his pleadings that he was entitled to a setoff against plaintiff's claims for amounts he had expended for the benefit of Emrich Furniture Co., also a defendant. The trial court found that Emery was not entitled to that offset. The Supreme Court disagreed, but the record was insufficient to determine what the setoff should be; therefore, the case was remanded to the trial court for additional testimony to determine the reasonable value of the labor and materials supplied by defendants for which nothing had been paid.

Here, it is clear that plaintiff did not assert, and did not intend to assert, anything other than a claim that

the parties had entered into a partnership. Counsel for the parties agreed during a deposition shortly before trial that the issue of the existence of a partnership was the only thing that would be tried. It was the only issue which was tried or argued in the trial court. It appears that plaintiff decided as a matter of tactics that making the alternative claim would tend to weaken his partnership claim. In my opinion, the trial court properly found that no other issues were presented which would permit an award of damages to plaintiff.

The result of the majority opinion is a remand of this case for a new trial on new claims: one based on either *quantum meruit* or an implied contract, and the other on a claim for money had and received. Presumably, defendant would be entitled to reallege his counterclaim for damages alleged to have resulted from plaintiff's negligence in performing architectural services. That kind of remand is not just for additional evidence; it is for a separate trial on new claims.

Accordingly, I dissent from that disposition of the case.